**SIERRA MEDICAL CENTER,**
**Plaintiff–Appellee,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellant.**

**No. 89–1806.**

United States Court of Appeals, Fifth Circuit.

June 5, 1990.

---

Ira C. Lupu, Appellate Staff, Civil Div., Dept. of Justice, Anthony J. Steinmeyer, Washington D.C., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for defendant-appellant.

Patric Hooper, Hooper, Lundy & Bookman, Inc., Los Angeles, Cal., for plaintiff-appellee.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

### Statement of Facts

In 1976, Sierra Medical Center (Sierra) agreed to care for Medicare patients and, in return, the Department of Health and Human Services (HHS) agreed to reimburse Sierra. See 42 U.S.C. Section 1395 et seq. Sierra accepted its first Medicare patient February 10, 1976 (its first day open for business). Before reimbursing Sierra, HHS required Sierra to designate a "cost reporting period." A cost reporting period functions as a fiscal year for Medicare claims. At the end of each health care provider's (provider) cost reporting period, HHS adjusts interim payments to reimburse properly the provider for its services. Sierra chose the period from March 1 to the last day of February as its cost reporting period.

During its first two operating years, Sierra asked HHS to designate it a "new provider."[1] (Sierra's first operating year began the day it opened for business.) Providers operating less than three years qualify as new providers. 20 C.F.R. Section 405.460(g)(2) (1974); 42 C.F.R. Section 405.460(e)(2) (1979); 42 C.F.R. Section 413.-30(e) (1988). A 1974 regulation permitted new providers to carry forward certain unreimbursed costs for possible later reimbursement. HHS granted Sierra's requests. Sierra then requested that HHS designate it a new provider for its third cost reporting period. HHS denied that request. HHS's refusal to designate Sierra a new provider for its third cost reporting period reduced Sierra's reimbursement for that period.[2] As a new provider, Sierra could recover costs of $103.51 instead of $95.14 per day for its third cost reporting period.

Sierra unsuccessfully contested HHS's decision. It argued that HHS should apply a 1979 regulation that calculates the new provider period differently than the 1974 regulation that HHS applied. After exhausting its administrative remedies,[3] Sierra sued HHS. Both parties moved for summary judgment. The district court granted Sierra's motion, reversed HHS's decision, and applied the 1979 regulation retroactively. HHS appealed. HHS argues that the 1979 regulation does not apply; the district court improperly applied the 1979 regulation retroactively; the 1974 regulation applies; and Sierra does not qualify as a new provider under the 1974 regulation.

### Standard of Review

We will reverse HHS's decision only if it acted arbitrarily, capriciously, not in accordance with law, or abused its discretion.

---

1. Blue Cross and Blue Shield Association ("Blue Cross") processed Sierra's requests on HHS's behalf. See 42 U.S.C. Sections 1395g and 1395h.

2. HHS regulations limit the amount HHS will reimburse hospitals for caring for Medicare beneficiaries. HHS establishes allowable costs but then caps the total amount HHS will pay for allowable costs. The cap prevents health care providers from being reimbursed for all their allowable costs. Because new hospitals have start-up costs and low occupancy rates, HHS reimburses those "new providers" for the actual allowable costs without the cap. 42 C.F.R. Section 413.30(e)(1), (2), and (3).

3. Sierra appealed Blue Cross's decision to the Provider Reimbursement Review Board (PRRB). PRRB affirmed Blue Cross's decision. Sierra then appealed to the Deputy Administrator of the Health Care Financing Administration but lost again.

42 U.S.C. Section 1395oo (f)(1); Administrative Procedure Act, 5 U.S.C. Section 701 *et seq.* Neither party disputes the facts, hence we need decide only legal questions. We review the district court's legal conclusions *de novo.*

### Discussion

### I

### The 1979 Regulation

■ The 1979 regulation permits new providers to recoup certain costs until "the end of the provider's first cost reporting period beginning at least two years after the provider accepts its first patient." 42 C.F.R. Section 405.460(e)(2) (1979).[4] Sierra's contested cost reporting period began March 1, 1978 and ended February 28, 1979. Sierra accepted its first patient on February 10, 1976. March 1, 1978 is more than two years after February 10, 1976. So Sierra's third cost reporting period began at least two years after it accepted its first patient. Therefore, Sierra qualifies as a new provider for its third cost reporting period under the 1979 regulation.

HHS argues that the 1979 regulation does not apply to Sierra's third cost reporting period because the 1979 regulation became effective four months *after* Sierra's third cost reporting period ended. Sierra argues that the 1979 regulation applies because it was the law in effect when Sierra challenged HHS's decision before the PRRB.

The 1979 regulation became effective July 1, 1979. Sierra challenged HHS's determination after that date. These dates certainly lead to HHS's conclusion that the 1979 regulation does not apply to Sierra's third cost reporting period. However, citing *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), Sierra argues that the PRRB should have "appl[ied] the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or [unless] there is a statutory direction or legislative history to the contrary."

Sierra misconstrues the meaning of the phrase "law in effect." By promulgating the 1979 regulation, HHS did not vanquish the 1974 regulation. The 1979 regulation is "[e]ffective for cost reporting periods beginning on or after July 1, 1979." 44 Fed.Reg. 31802 (1979). For cost reporting periods ending *before* July 1, 1979, the 1974 regulation is the "law in effect." Because Sierra's third cost reporting period began before July 1, 1979, the 1974 regulation was the law in effect when the PRRB decided Sierra's claim, as it is for us today.[5]

Sierra argues that the effective date does not apply to the 1979 regulation because the date appears in the Federal Register Notice but not in the regulation. However, the effective date in the Federal Register Notice expressly applies to the 1979 regulation. *See* 44 Fed.Reg. 31802. Therefore, the 1979 regulation became effective July 1, 1979—after the end of Sierra's third cost reporting period.

### II

### Retroactivity

HHS next argues that the district court erred by applying the 1979 regulation retroactively. The district court based its decision on general principles of retroactivity and 42 U.S.C. Section 1395x(v)(1)(A)(ii).

---

**4.** The 1979 regulation states:
*Exemptions.* Exemptions to the limits imposed under this section may be granted in the following circumstances:
 * * * * *
(2) *New Provider.* The provider of inpatient services has operated as the type of provider ... for which it is certified for Medicare, under present and previous ownership, for less than 3 full years. An exemption granted under this paragraph expires at the end of the provider's first cost reporting period begin-

ning at least 2 years after the provider accepts its first patient.
42 C.F.R. Section 405.560(e)(2) (1979).

**5.** Even assuming that *only* the 1979 statute is "the law in effect" today, we still would not apply it retroactively. The 1979 statute includes the July 1, 1979 starting date and thus provides the statutory direction that courts should not apply it retroactively. *See Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006.

*a*

■ The district court first relied on cases finding that curative or remedial laws should be liberally construed to accomplish the desired correction retrospectively. However, the district court misapplied general principles of retroactivity in this case. Generally, courts will not apply regulations retroactively unless their language so requires. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Nothing in the 1979 regulation requires us to apply the regulation retroactively. Nor will courts apply regulations retroactively if doing so interferes with antecedent rights. *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621–622, 11 L.Ed.2d 576. Applying the 1979 regulation retroactively will not interfere with Sierra's antecedent rights but instead will benefit Sierra. Likewise, applying the 1979 regulation retroactively will not interfere with HHS's *antecedent* rights. Hence the usual reasons for barring retroactivity do not apply here. Nevertheless, the general rule barring retroactivity still applies. Unless the 1979 regulation expressly applies retroactively, we will not apply it retroactively. It does not. Instead, it expressly applies *after* July 1, 1979. Therefore, we certainly will not apply it retroactively.

Public policy militates against retroactive application. Ordering HHS to apply this regulation retroactively will discourage "agencies from reconsidering their regulations in light of new data for fear of being forced to apply new regulations retroactively." *Hennepin County v. Sullivan*, 883 F.2d 85, 91 (D.C.1989), *cert denied*, —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1989). If an agency lacks funds to apply a regulation retroactively, the agency may not promulgate the new regulation even if it could afford to apply the regulation prospectively. Beneficiaries of the suggested regulatory change will suffer. Presumably, Sierra does not advocate such a result. Therefore, we will not establish such a rule in this case.

■ Undaunted, Sierra argues that those provisions in the 1979 regulation favorable to providers apply retroactively while those unfavorable to providers do not. Sierra unacceptably carves up the 1979 regulation. Nothing in the regulation or the Federal Register Notice remotely suggests this interpretation. In fact, the Federal Register Notice summarizes the regulation as a whole:

This rule revises the existing Medicare regulation for setting limits on reimbursable costs based on estimates of the costs necessary in the efficient delivery of needed health care. The rule clarifies and expands the exemptions and exceptions providers may obtain. It also sets a time limit within which a provider must request a reclassification, exemption or exception and, similarly, sets a limit on the time within which HCFA [Health Care Financing Administration] must respond to the request. It also requires a provider seeking an exception to agree to an operational review by HCFA. The purpose of the rule is to implement more effectively and equitably section 223 of the Social Security Amendments of 1972.

44 Fed.Reg. 31802. As the summary indicates, the effective date encompasses the entire 1979 regulation.

Sierra also argues that we should apply the 1979 regulation retroactively because HHS *intended* the new provider period to cover a provider's first three operating years. HHS's interpretation limited Sierra to just two years and nineteen days as a new provider. However, Sierra's argument ignores the language in the 1979 regulation that excludes Sierra's third cost reporting period from coverage. Given the 1974 regulation's clear language, we need not determine what, in fact, HHS intended when it promulgated the 1974 regulation. *See Sutton v. United States*, 819 F.2d 1289 (5th Cir.1987).

*b*

■ The district court also relied on Section 1395x(v)(1)(A)(ii) as authority for applying the 1979 regulation retroactively. HHS argues that Section 1395x(v)(1)(A)(ii) bars it from applying the 1979 regulation retroactively while Sierra argues that Sec-

tion 1395x(v)(1)(A)(ii) empowers HHS to do just that.

Section 1395x(v)(1)(A)(ii) permits HHS to adjust reimbursements paid to a provider when HHS regulations prescribing computational methods reach incorrect results.[6] *Georgetown*, 109 S.Ct. at 471. It does not permit HHS to change the *methods* used; instead it permits HHS to adjust the *aggregate amounts* of reimbursement that applying those methods produced.[7] *Georgetown*, 109 S.Ct. at 472–473.[8] Providers get "what they are actually due under the applicable regulation, no more and no less." *Hennepin*, 883 F.2d at 93. If HHS' interim payments to Sierra do not equal the amount due Sierra under the 1974 regulation, then HHS can correct the error by invoking Section 1395x(v)(1)(A)(ii) to adjust retroactively the interim payments. Applying the 1979 regulation to Sierra when the regulation otherwise does not apply exceeds the scope of HHS's power to adjust retroactively interim payments.

## III

### *The 1974 Regulation*

■ If the 1979 regulation does not apply, the 1974 regulation must. No other candidate remains. Sierra qualifies as a new provider under the 1974 regulation only for "any cost reporting period ending on or before the last day of its third year of operation." 20 C.F.R. Section 405.460(g)(1) (1974); 42 C.F.R. Section 405.460(g)(1) & (2) (1974).[9] Sierra's third cost reporting period

---

**6.** 42 U.S.C. Section 1395x(v)(1)(A)(ii) states:
The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; except that in any case to which paragraph (2) or (3) applies, the amount of the payment determined under such paragraph with respect to the services involved shall be considered the reasonable cost of such services. In prescribing the regulations referred to in the precedent sentence, the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations

shall.... (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.
(Emphasis added.)

**7.** The Court in *Georgetown* specifically held that Section 1395x(v)(1)(A) does *not* permit HHS to promulgate retroactive cost limits that reduce reimbursements to providers. *Georgetown*, 109 S.Ct. at 472.

**8.** Before *Georgetown*, we interpreted the reach of Section 1395x(v)(1)(A)(ii) in two cases. *See Mount Sinai Hosp. of Gr. Miami, Inc. v. Weinberger*, 517 F.2d 329, 335–336 (5th Cir.1975), (HHS may exercise its common law right to recoup excess payments; Section 1395x(v) allows HHS to adjust its previous interim payments to hospitals if HHS's interim payments were either high or low); *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 954 (5th Cir.1977), (Section 1395x(v)(1)(A)(ii) requires HHS to retroactively adjust under- or overpayments made to providers).

**9.** The 1974 regulation states:
*New providers: accumulation of unreimbursed costs and carryover to subsequent periods.*
(1) *General.* A new provider of services may carry forward for five succeeding cost reporting periods costs attributable to health insurance program beneficiaries which are unreimbursed under this section and not charged to patients during any cost reporting period ending on or before the last day of its third year of operation. Such period is called the new provider base period. If the five succeeding cost reporting periods combined include few-

**394**

ended February 28, 1979 and its third operating year ended February 9, 1979. February 9 is not on or before February 28. In other words, Sierra's third cost reporting period ended *after* the last day of its third operating year rather than on or before that day. Therefore, the 1974 regulation does not qualify Sierra as a new provider for its third cost reporting period.

### Conclusion

The district court erred when it applied the 1979 regulation retroactively to Sierra's third cost reporting period. The 1974 regulation applies. Under that regulation, Sierra does not qualify as a new provider for its third cost reporting period. Therefore, we REVERSE the decision of the district court.

er than 60 full calendar months, the provider may carry forward such unreimbursed costs for one additional reporting period.

(2) *New provider defined.* A new provider is an institution that has operated as the type of facility ... for which it is certified in the program under present and previous ownership for less than 3 full years.

42 C.F.R. Section 405.460(g) (1974).