# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2009

Charles R. Fulbruge III
Clerk

No. 07-30942

DANIEL CASTELLANOS-CONTRERAS; OSCAR RICARDO DEHEZA-
ORTEGA; RODOLFO ANTONIO VALDEZ-BAEZ

Plaintiffs - Appellees

v.

DECATUR HOTELS LLC; F PATRICK QUINN, III

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and JOLLY and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The petition for panel rehearing is GRANTED. The prior opinion is WITHDRAWN, and the following opinion replaces it.

The aftermath of Hurricane Katrina required New Orleans hotelier Decatur Hotels, L.L.C. ("Decatur") to look to foreign sources of labor. A group of these employees (collectively, the "guest workers"), who held H-2B visas while working for Decatur, contend that Decatur violated the Fair Labor Standards Act ("FLSA") by paying them less than minimum wage, free and clear, when Decatur refused to reimburse them for recruitment, transportation, and visa

expenses that they incurred before relocating to the United States to work for Decatur.

Decatur filed a motion to dismiss and/or for summary judgment, and the guest workers filed a cross-motion for summary judgment. The district court denied Decatur's motion, granted the guest workers' motion in part, and certified its order for interlocutory appeal. A motions panel of this court authorized Decatur to file an interlocutory appeal. In this interlocutory appeal under 28 U.S.C. § 1292(b), Decatur raises three issues of first impression for this court: whether, under the FLSA, an employer must reimburse guest workers for (1) recruitment expenses, (2) transportation expenses, or (3) visa expenses, which the guest workers incurred before relocating to the employer's location. We conclude that the FLSA does not require an employer to reimburse any of these expenses. We therefore reverse the district court's order, and we render judgment in favor of Decatur.

I.

Decatur operates luxury hotels in the New Orleans area. Before Hurricane Katrina struck New Orleans, Decatur employed between 600 and 650 workers. After Hurricane Katrina struck New Orleans, the size of Decatur's staff dropped to between 90 and 110 workers. Decatur attempted to recruit local residents to join its staff, but its efforts were largely unsuccessful. Decatur urgently needed to hire maintenance, housekeeping, and front-desk employees.

Virginia Pickering, a Baton Rouge businesswoman, read a news article that mentioned Decatur's staff shortage. Pickering owned and operated Accent Personnel Services, Inc., a company that guided U.S. employers through the process of becoming H-2B visa sponsors.[1] As H-2B visa sponsors, the employers legally could hire foreign workers to fill temporary job positions.

---

[1] The term "H-2B visa" refers to a visa authorized by 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

Pickering advertised Accent Personnel's services to Decatur's chief executive officer, F. Patrick Quinn III. Pickering offered to guide Decatur through the H-2B application process, to oversee the recruitment of H-2B workers, and to coordinate the workers' arrival times in the United States. If Decatur were to use Pickering's services, it would need only to supply Pickering with information that she would need to complete Decatur's H-2B sponsorship application, to pay H-2B sponsorship-application fees, and to meet its new employees when they arrived in New Orleans. Pickering would do everything else necessary to secure the temporary workers for Decatur. For these services, Pickering would charge Decatur $300 per job position filled.

Quinn agreed that Decatur would use Pickering's services to hire housekeepers, maintenance workers, and front-desk clerks; and Pickering went to work. She identified the wage rate at which Decatur would need to pay the housekeepers, maintenance workers, and front-desk clerks to comply with Department of Labor regulations. She ensured that Decatur recruited U.S. citizens to fill its open job positions before offering the same positions to foreign workers. She prepared Decatur's application to sponsor H-2B visas. She also prepared, and a Decatur manager signed, a blank job offer for each open job position.

Unbeknownst to Decatur, Pickering also owned and operated a second company: VP Consultants, LLC. Through VP Consultants, Pickering offered a service that connected with her services at Accent Personnel: after identifying U.S. employers (such as Decatur) that were sponsoring H-2B visas, she provided this information, for a fee, to recruitment companies that represented foreign workers seeking temporary U.S. employment. In exchange for $900 per Decatur job position, or "referral," VP Consultants informed Global Services, Inc., of 70 hotel-clerk positions; EuroUSA, Inc., of 70 housekeeping positions; and International Jobs & Studies S.A.C. of 130 maintenance positions.

Although VP Consultants generated revenue by informing recruitment companies of Decatur's job positions, Pickering testified that she also had been willing to share information about Decatur's job positions with foreign workers who contacted VP Consultants directly. However, there is no indication in the record that such contacts occurred or that, given the foreign workers' circumstances, such contacts were possible. It also is unclear what fee, if any, VP Consultants would have charged the workers to receive information about Decatur's job positions.

In theory, the guest workers also could have contacted Decatur directly to learn about Decatur's job positions; Decatur would have referred such inquiries to Pickering. No guest worker contacted Decatur directly, and it is unclear whether such contact would have been feasible.

Nevertheless, each worker hired a recruitment company to locate H-2B job opportunities on his or her behalf, to guide him or her through the H-2B visa application process, and to arrange transportation to the United States. Each recruitment company charged between $1,700 and $2,000 for its services.[2] In addition to this fee, each recruitment company required workers to pay their own visa-application fees as well as all transportation expenses necessary to relocate to the United States.[3] Altogether, each guest worker paid between approximately $3,000 and approximately $5,000 in recruitment, transportation, and visa expenses before relocating to the United States.

When the guest workers arrived in New Orleans, Decatur conducted a week-long orientation session, for which it paid the workers; and the guest

---

[2] The parties refer to these fees alternatively as "recruitment expenses" and "hiring expenses." We will refer to the fees as "recruitment expenses."

[3] For brevity, we will refer to the transportation expenses necessary to relocate to the United States as "transportation expenses" or "inbound transportation expenses." These shorthand references in no way describe the expenses necessary to travel daily from home to work. Such expenses are not before us in this case.

workers began to work. Decatur paid the guest workers whom it hired through Global Services, Inc., $6.09 per hour, the guest workers whom it hired through EuroUSA, Inc., $6.02 per hour, and the guest workers whom it hired through International Jobs & Studies S.A.C. $7.79 per hour. As we have said, Decatur did not reimburse the guest workers for their recruitment, transportation, or visa expenses, all of which they incurred before relocating to the United States.

The guest workers, proceeding under the FLSA, filed a complaint in federal district court seeking to recover these expenses, as well as liquidated damages, costs, and attorney's fees. Decatur defended on grounds that the FLSA does not obligate it to reimburse the guest workers for their recruitment, transportation, or visa expenses. To this end, Decatur filed a motion to dismiss and/or for summary judgment; and the guest workers filed a cross-motion for summary judgment. In a single order, the district court denied Decatur's motion and granted the guest workers' motion in part, insofar as it allowed them to proceed with their FLSA claim.

Decatur asked the district court to certify its order for interlocutory appeal. The district court granted Decatur's motion. It identified, as a controlling issue of law as to which there is substantial ground for difference of opinion, the question "whether non-agricultural H-2B guestworkers are entitled to the protections of the FLSA." A motions panel of this court then permitted Decatur to file this interlocutory appeal under 28 U.S.C. § 1292(b). The district court's proceedings have not been stayed.

II.

We first must consider our jurisdiction over this interlocutory appeal. The guest workers contend that we lack jurisdiction—or, in the alternative, that our jurisdiction is limited to answering the single question identified by the district court as a controlling issue of law.

A motions panel's decision to allow an interlocutory appeal is not binding upon the panel that subsequently considers the appeal's merits; "the merits panel may conclude that the initial decision to hear the appeal was, or was later rendered, improvident. If the merits panel reaches that conclusion, it must vacate the earlier order granting leave to appeal and must remand the case to the district court." *United States v. Bear Marine Servs.*, 696 F.2d 1117, 1119 (5th Cir. 1983). We therefore will review the motions panel's decision for improvidence.

We initially examine whether our jurisdiction over this appeal, if accepted, is limited to the single question identified by the district court as controlling. The Supreme Court has held quite clearly that it is not; 28 U.S.C. § 1292(b) grants jurisdiction "over any question that is included within the order that contains the controlling question of law identified by the district court." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204 (1996). Here, the order for which the district court certified interlocutory appeal contains three questions in addition to the question that the district court identified as controlling: whether the FLSA requires an employer to reimburse guest workers for: (1) their recruitment expenses, (2) their transportation expenses, or (3) their visa expenses. *Castellanos-Contreras v. Decatur Hotels, Inc.*, No. 06-4340, at 2 (E.D. La. July 19, 2007) (order denying motion to alter or amend judgment, granting motion to certify interlocutory appeal, and denying motion to stay pending interlocutory appeal). In the light of *Yamaha*, we may consider these questions as well as the threshold question whether H-2B guest workers are entitled to the FLSA's protections.

Whether the FLSA entitles guest workers to reimbursement for their recruitment, transportation, or visa expenses are, as we have noted, questions of first impression for this court. We conclude that these questions are controlling questions of law in this case, as to which there is substantial ground

for difference of opinion. The motions panel's decision to grant interlocutory review was not improvident. We now will consider the questions before us.

III.

In response to the question identified by the district court, we hold that guest workers are entitled to FLSA protection. *See In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) ("[T]he protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant."). Whether the FLSA entitles guest workers to reimbursement of recruitment, transportation, or visa expenses merits lengthier discussion.

A.

The guest workers contend that they are entitled to reimbursement because, under 29 U.S.C. § 203(m), the expenses they incurred are *de facto* deductions from cash wages received for their first week of work, leaving a balance owed them by Decatur. In other words, they liken these expenses (in an inverse way) to employer-furnished "facilities," such as room and board, which the employer may *deduct* from an employee's wages; only here, the guest workers contend that Decatur must *reimburse* them for expenses that they incurred before their first workweek began.

Section 203(m) defines wages as cash or "the reasonable cost . . . to the employer *of furnishing* [the] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." (Emphasis added.) The provision's plain language thus permits employers flexibility in the method of paying employees. This section of the FLSA, contrary to the guest workers' suggestion, does not impose liability upon employers for expenses that employees incur. *See Donovan v. Miller Props., Inc.*, 711 F.2d 49, 50 (5th Cir. 1983) (per curiam) ("[S]ection 3(m) of the Fair Labor Standards Act, 29 U.S.C. § 203(m), . . . *allows an employer to*

*credit* toward its obligation to pay the minimum wage 'the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities' . . . .") (emphasis added). Section 203(m) provides no ground for Decatur to have violated the FLSA by refusing to reimburse the guest workers for recruitment, transportation, and visa expenses that they incurred.

B.

We thus turn to the argument that Decatur's failure to pay these pre-employment expenses encumbered the guest workers' wages, so that Decatur did not pay the wages "finally and unconditionally or 'free and clear'":

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35.

The above-quoted regulation does not define when an employee-incurred expense constitutes a kick-back. Our precedents, however, clarify that an employer-imposed condition of employment is a kick-back if it "tend[s] to shift part of the employer's business expense to the employees." *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972).

We now consider whether, under 29 C.F.R. § 531.35, the guest workers are entitled to reimbursement of their recruitment, transportation, or visa expenses.

1.

We begin with the visa expenses. Although § 531.35 does not specifically address employers' obligation to reimburse guest workers for these expenses, other regulations clarify that employee-paid expenses to obtain H-2B visas more properly belong to the guest worker than to the employer. *See* 22 C.F.R. §§ 40.1(*l*)(1) (requiring nonimmigrant visa applicants, such as the guest workers here, to submit processing fees when they apply for visas). The expense of applying to become a sponsoring employer of H-2B employees, by contrast, more properly belongs to the employer. *See* 8 C.F.R. §§ 103.7(a), 103.7(b)(1), 214.2(h)(2)(i)(A) (requiring, collectively, that a U.S. employer submit certain forms and filing fees to become an H-2B visa sponsor). These regulations, which assign H-2B visa processing fees to visa applicants and H-2B sponsorship-application fees to employers, show that requiring the guest workers to bear the visa expenses at issue did not tend to shift part of Decatur's business expense to the guest workers. We hold that Decatur has no FLSA responsibility to reimburse the guest workers for the visa expenses that the employees incurred.

2.

We next consider the transportation expenses. For many years, the Department of Labor interpreted the FLSA and its implementing regulations as requiring employers to bear guest workers' inbound transportation expenses. *See* Wage & Hour Div. Op. Ltr., 1990 DOLWH LEXIS 1, at *3 (June 27, 1990) ("Under the FLSA, it has always been the position of the Department of Labor that no deduction, that cuts into the minium wage, may be made for transportation of workers from the point of hire and return to that point . . . . [S]uch transportation costs [are] primarily for the benefit of the

employer."). The agency, however, has called this interpretation into question. *See Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture or Registered Nursing in the United States (H–2B Workers), and Other Technical Changes*, 73 Fed. Reg. 78020, 78041 (Dec. 19, 2008) ("[T]he cost[] of relocation to the site of the job opportunity generally is not an 'incident' of an H-2B worker's employment within the meaning of 29 CFR 531.32, and is not primarily for the benefit of the H-2B employer."); *Withdrawal of Interpretation of the Fair Labor Standards Act Concerning Relocation Expenses Incurred by H-2A and H-2B Workers*, 74 Fed. Reg. 13261, 13262 (Mar. 26, 2009) ("DOL believes that this issue warrants further review. Consequently . . . DOL withdraws the [December 19, 2008,] FLSA interpretation . . . for further consideration and the interpretation may not be relied upon as a statement of agency policy . . . ." (footnote omitted)); *see also De Luna-Guerrero v. N.C. Grower's Ass'n*, 338 F. Supp. 2d 649, 659 (E.D.N.C. 2004) ("[T]he issue [of an employer's liability for transportation expenses] has been under review by the DOL. . . . DOL's policy regarding *de facto* deductions [of transportation expenses] is anything but clear."); *Rivera v. Brickman Group, Ltd.*, 2008 U.S. Dist. LEXIS 1167, at *37-39 (E.D. Pa. Jan. 7, 2008) ("The *DeLuna-Guerrero* court refused to rely on the opinion letters because it believed the Department of Labor's position to be too unclear. I agree, and in so doing, I note that the Department of Labor's position is not merely unclear, but untenable. * * * Given the apparent (and now more than thirteen-year-old) incoherence at the Department of Labor with regard to this issue, I am not persuaded that I should accord the older opinion letters any significant weight [under *Auer v. Robbins*, 519 U.S. 452 (1997), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)].").

We agree with the *Rivera* court that *Auer* deference to the DOL's older interpretation seems inappropriate. Furthermore, inasmuch as the DOL never

fully explained why it adopted that interpretation in the first place, we agree with the Eleventh Circuit that *Skidmore* deference seems inappropriate. *See Arriaga v. Fla. Pac. Farms*, 305 F.3d 1228, 1239 (11th Cir. 2002) ("Because of this lack of explanation, it is impossible to weigh the 'validity of its reasoning' or the 'thoroughness [] in its consideration.'" (quoting *Skidmore*, 323 U.S. at 140) (alteration in original)). Relying on case law that defers to the interpretation similarly seems inappropriate, and thus we can accord no weight to the guest workers' cited authorities such as *Marshall v. Glassboro Service Ass'n*, 1979 U.S. Dist. LEXIS 9053, at *6 (D.N.J. Oct. 19, 1979); and *Torreblanca v. Naas Foods, Inc.,* 1980 U.S. Dist. LEXIS 13893, at *13 (N.D. Ind. Feb. 25, 1980).

As is the case with visa expenses, the regulation addressing employer kickbacks does not specify whether an H-2B guest worker's inbound transportation expenses belong more properly to the employer or to the guest worker. Other statutory and regulatory provisions may guide this determination.

Two provisions have some relevance. Under the Immigration and Nationality Act, an H-2B guest worker's *outbound* transportation expenses sometimes belong to the employer. *See* 8 U.S.C. § 1184(c)(5)(A).[4] Under U.S. Citizenship and Immigration Service regulations, an *H-2A* agricultural guest worker's inbound transportation expenses sometimes belong to the employer. *See* 20 C.F.R. § 655.102(b)(5)(i). No provision, however, requires an employer to bear an H-2B guest worker's inbound transportation expenses. We find silence

---

[4] The guest workers contend, under *Rivera*, that the Immigration and Nationality Act has no bearing on these FLSA issues. We find *Rivera* unhelpful for this point. The court there *assumed* that the FLSA required employers to reimburse guest workers for inbound transportation expenses. *See* 2008 U.S. Dist. LEXIS 1167, at *8-9. From this assumption, it considered only whether 8 U.S.C. § 1184(c)(5)(A) *conflicts with and overrides* the FLSA. *See id.* at *9-10. We consider the antecedent question *whether* the FLSA requires an employer to reimburse guest workers for inbound transportation expenses. Because we conclude that it does not, we do not reach *Rivera*'s question and do not find that case helpful in answering the question before us.

in this context indicative that Congress most likely did not intend for the employer to bear H-2B guest workers' inbound transportation expenses.[5]

The guest workers do cite two cases which, without relying on the DOL's now-unclear FLSA interpretation, hold that employers must bear guest workers' inbound transportation expenses. *See Arriaga*, 305 F.3d at 1244 (11th Cir. 2002); *Rivera*, 2008 U.S. Dist. LEXIS 1167, at *42-44. *Arriaga* involves H-2A guest workers. It holds that employers must bear guest workers' inbound transportation expenses because the expenses are "incident of and necessary to" the guest workers' employment. *See* 305 F.3d at 1241-44. We find *Arriaga* distinguishable insofar as its analysis derives from the case's H-2A, as opposed to H-2B, origins. *Arriaga* also is distinguishable because its "incident of and necessary to" standard originates from 29 C.F.R. § 531.32 instead of § 531.35. Section 531.32 implements 29 U.S.C. § 203(m); and, as we have said, our *Donovan* precedent from 1983 informs us that, under Fifth Circuit law, § 203(m) imposes no obligation on employers to bear employee-incurred expenses. We will not follow *Arriaga*.

*Rivera* essentially does follow *Arriaga*, albeit in the H-2B context. *Rivera* quotes 29 C.F.R. § 531.35 at length, 2008 U.S. Dist. LEXIS 1167, at *36-37, but ultimately decides the issue of transportation expenses under 29 U.S.C. § 203(m): "point-of-hire transportation is primarily for the employer's benefit, both because it is dissimilar to lodging and board, and because the expense arises out of Brickman's decision actively to recruit workers in foreign countries." *Id.* at *43. We do not necessarily agree with *Rivera* that *Arriaga*'s reasoning extends so readily from H-2A guest workers to H-2B guest workers.

---

[5] Furthermore, Decatur's circumstances differ substantially from those triggering an employer's liability under 8 U.S.C. § 1184(c)(5)(A). Section 1184(c)(5)(A) ensures that an early-dismissed guest worker has the means to leave the United States. Such circumstances are not relevant here.

In any event, *Donovan* forecloses us from following *Rivera*'s § 203(m)-based analysis. Just as we will not follow *Arriaga*, we will not follow *Rivera*.

On the authorities before us, we hold that the FLSA does not obligate Decatur to reimburse its guest workers for their inbound transportation expenses.[6]

3.

Finally, we consider whether the FLSA obligates Decatur to reimburse its guest workers for the expenses that they incurred with foreign recruitment companies. The FLSA's provisions do not require reimbursement of these employee-incurred expenses. *See* 29 U.S.C. § 201 *et seq.* Neither do the FLSA's implementing regulations—unless the expenses were "kick-backs" to Decatur. *See* 29 C.F.R. § 531.35.

We hold that the recruitment expenses were not kick-backs within the meaning of § 531.35. The expenses differed in all fundamental characteristics from the expenses that our court has labeled kick-backs. *See Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (deduction from cashiers' wages to pay for every shortage in employer cash-register accounts, regardless of the reason for the shortage); *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1370 (5th Cir. 1973) (employee's wage deduction in favor of employer to recover the cost of a wrecked company truck). The expenses were not treated as an employer obligation by custom or practice of Decatur's industry. In sum, there is no basis in custom, practice, or law to include the recruitment expenses as part of Decatur's business expense.

---

[6] Because we hold that the FLSA does not obligate Decatur to reimburse the guest workers for their transportation expenses, we do not consider Decatur's argument in the alternative that, even if the FLSA otherwise purports to obligate reimbursement, the Portal-to-Portal Act and Immigration and Nationality Act nevertheless bar recovery.

Our attention, however, has been brought to two relatively new regulations that for the first time address unscrupulous practices in recruiting workers to participate in the H-2B visa program. Effective January 18, 2009, the Department of Labor requires an employer seeking H-2B labor certification to attest that "[t]he employer has contractually forbidden any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2B workers to seek or receive payments from prospective employees, except as provided for in DHS regulations at 8 CFR 214.2(h)(5)(xi)(A)." 20 C.F.R. § 655.22(g)(2). Also effective January 18, 2009, the Department of Homeland Security forbids an employer, employer's agent, recruiter, or similar employment service from collecting any "job placement fee or other compensation (either direct or indirect)" from a foreign worker as a condition of an H-2B job offer or as a condition of H-2B employment. 8 C.F.R. § 214.2(h)(6)(i)(B).[7] These regulations ultimately may influence whether H-2B employers will reimburse the recruitment expenses of future guest workers, but they do not affect Decatur's obligations here. *See, e.g.*, *Sierra Med. Ctr. v. Sullivan*, 902 F.2d 388, 392 (5th Cir. 1997) ("Generally, courts will not apply regulations retroactively unless their language so requires."); 20 C.F.R. § 655.5 (indicating, by creating a transition period for implementing the Department of Labor's January 2009 changes to 20 C.F.R. part 655, that the changes do not apply retroactively); 73 Fed. Reg. 78103, 78127-30 (Dec. 19, 2008) (giving no indication that the Department of Labor's January 2009 changes to 8 C.F.R. part 214 apply retroactively). Furthermore, because the regulations for the first time forbid an

---

[7] This regulation does not prohibit an H-2B visa sponsor from requiring guest workers to pay for transportation and visa expenses. *See* 8 C.F.R. § 214.2(h)(6)(i)(B) (excepting from its prohibition of worker-incurred expenses "the lower of the actual cost or fair market value of transportation to such employment and any government-mandated passport, visa, or inspection fees, to the extent that the passing of such costs to the beneficiary [guest worker] is not prohibited by statute, unless the employer, agent, facilitator, recruiter, or similar employment service has agreed with the beneficiary that it will pay such costs and fees").

H-2B employer from permitting guest workers to bear such recruitment expenses, they strongly suggest that the guest workers' recruitment expenses incurred long before the regulations became effective were not part of Decatur's business expense.

Finally, our conclusion is not disturbed by the one case that the guest workers cite holding recruitment expenses can be part of an employer's business expense. *See Rivera*, 2008 U.S. Dist. LEXIS 1167, at *47-*50. The employer there, Brickman, required guest workers to hire a particular recruitment company, which charged them fees. *See id.* at *48-*49. Because the employer *required* the guest workers to use the recruitment company, the court concluded "that fees associated with Brickman-designated workers' representatives [we]re costs 'primarily for the benefit of the employer,' and that Brickman, therefore, was not allowed to pass those costs along [to the guest workers] to the extent that doing so reduced their wages below the FLSA minimum." *Id.* at *50.

Assuming the correctness and continued validity of that case's reasoning, the case is distinguishable. Here, there is no evidence that Decatur even knew about the foreign recruitment companies, much less that the companies charged a fee to the guest workers as a condition of receiving an offer of employment. Decatur paid Pickering $300 per job position filled, which itself was in the nature of an employer-paid recruitment fee. Although the record does show that the guest workers knew of no other way to obtain employment with Decatur, the record also shows that Decatur did not require, or approve, any guest worker to pay any sum to anyone as a condition of an H-2B job offer or as a condition of H-2B employment.

For all of the foregoing reasons, we hold that the FLSA does not obligate Decatur to reimburse the guest workers for their recruitment expenses.

IV.

In sum, we hold that Decatur incurred no FLSA liability to reimburse its guest workers for the recruitment fees, transportation costs, or visa fees that they incurred to work in the United States. We REVERSE the summary judgment, RENDER judgment in favor of Decatur, and REMAND for entry of same.

REVERSED and RENDERED; REMANDED for entry of judgment.