IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 11, 2009

Charles R. Fulbruge III
Clerk

No. 07-30942

DANIEL CASTELLANOS-CONTRERAS; OSCAR RICARDO DEHEZA-
ORTEGA; RODOLFO ANTONIO VALDEZ-BAEZ

Plaintiffs - Appellees

v.

DECATUR HOTELS LLC; F PATRICK QUINN, III

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and JOLLY and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The aftermath of Hurricane Katrina required New Orleans hotelier Decatur Hotels, L.L.C. ("Decatur") to look to foreign sources of labor. A group of these employees (collectively, the "guest workers"), who held H-2B visas while working for Decatur, contend that Decatur violated the Fair Labor Standards Act ("FLSA") by paying them less than minimum wage, free and clear, when Decatur refused to reimburse them for recruitment, transportation, and visa expenses that they incurred before relocating to the United States to work for Decatur.

Decatur filed a motion to dismiss and/or for summary judgment, and the guest workers filed a cross-motion for summary judgment. The district court denied Decatur's motion, granted the guest workers' motion in part, and certified its order for interlocutory appeal. A motions panel of this court authorized Decatur to file an interlocutory appeal. In this interlocutory appeal under 28 U.S.C. § 1292(b), Decatur raises three issues of first impression for this court: whether, under the FLSA, an employer must reimburse guest workers for (1) recruitment expenses, (2) transportation expenses, or (3) visa expenses, which the guest workers incurred before relocating to the employer's location. We conclude that the FLSA does not require an employer to reimburse any of these expenses. We therefore reverse the district court's order, and we remand the case with instructions that it be dismissed.

I.

Decatur operates luxury hotels in the New Orleans area. Before Hurricane Katrina struck New Orleans, Decatur employed between 600 and 650 workers. After Hurricane Katrina struck New Orleans, the size of Decatur's staff dropped to between 90 and 110 workers. Decatur attempted to recruit local residents to join its staff, but its efforts were largely unsuccessful. Decatur urgently needed to hire maintenance, housekeeping, and front-desk employees.

Virginia Pickering, a Baton Rouge businesswoman, read a news article that mentioned Decatur's staff shortage. Pickering owned and operated Accent Personnel Services, Inc., a company that guided U.S. employers through the process of becoming H-2B visa sponsors.[1] As H-2B visa sponsors, the employers legally could hire foreign workers to fill temporary job positions.

Pickering advertised Accent Personnel's services to Decatur's chief executive officer, F. Patrick Quinn III. Pickering offered to guide Decatur

---

[1] The term "H-2B visa" refers to a visa authorized by 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

through the H-2B application process, to oversee the recruitment of H-2B workers, and to coordinate the workers' arrival times in the United States. If Decatur were to use Pickering's services, it would need only to supply Pickering with information that she would need to complete Decatur's H-2B sponsorship application, to pay H-2B sponsorship-application fees, and to meet its new employees when they arrived in New Orleans. Pickering would do everything else necessary to secure the temporary workers for Decatur. For these services, Pickering would charge Decatur $300 per job position filled.

Quinn agreed that Decatur would use Pickering's services to hire housekeepers, maintenance workers, and front-desk clerks; and Pickering went to work. She identified the wage rate at which Decatur would need to pay the housekeepers, maintenance workers, and front-desk clerks to comply with Department of Labor regulations. She ensured that Decatur recruited U.S. citizens to fill its open job positions before offering the same positions to foreign workers. She prepared Decatur's application to sponsor H-2B visas. She also prepared, and a Decatur manager signed, a blank job offer for each open job position.

Unbeknownst to Decatur, Pickering also owned and operated a second company: VP Consultants, LLC. Through VP Consultants, Pickering offered a service that connected with her services at Accent Personnel: after identifying U.S. employers (such as Decatur) that were sponsoring H-2B visas, she provided this information, for a fee, to recruitment companies that represented foreign workers seeking temporary U.S. employment. In exchange for $900 per Decatur job position, or "referral," VP Consultants informed Global Services, Inc., of 70 hotel-clerk positions; EuroUSA, Inc., of 70 housekeeping positions; and International Jobs & Studies S.A.C. of 130 maintenance positions.

Although VP Consultants generated revenue by informing recruitment companies of Decatur's job positions, Pickering testified that she also had been

willing to share information about Decatur's job positions with foreign workers who contacted VP Consultants directly. However, there is no indication in the record that such contacts occurred or that, given the foreign workers' circumstances, such contacts were possible. It also is unclear what fee, if any, VP Consultants would have charged the workers to receive information about Decatur's job positions.

In theory, the guest workers also could have contacted Decatur directly to learn about Decatur's job positions; Decatur would have referred such inquiries to Pickering. No guest worker contacted Decatur directly, and it is unclear whether such contact would have been feasible.

Nevertheless, each worker hired a recruitment company to locate H-2B job opportunities on his or her behalf, to guide him or her through the H-2B visa application process, and to arrange transportation to the United States. Each recruitment company charged between $1,700 and $2,000 for its services.[2] In addition to this fee, each recruitment company required workers to pay their own visa-application fees as well as all transportation expenses necessary to relocate to the United States. Altogether, each guest worker paid between approximately $3,000 and approximately $5,000 in recruitment, transportation, and visa expenses before relocating to the United States.

When the guest workers arrived in New Orleans, Decatur conducted a week-long orientation session, for which it paid the workers; and the guest workers began to work. Decatur paid the guest workers whom it hired through Global Services, Inc., $6.09 per hour, the guest workers whom it hired through EuroUSA, Inc., $6.02 per hour, and the guest workers whom it hired through International Jobs & Studies S.A.C. $7.79 per hour. As we have said, Decatur

---

[2] The parties refer to these fees alternatively as "recruitment expenses" and "hiring expenses." We will refer to the fees as "recruitment expenses."

did not reimburse the guest workers for their recruitment, transportation, or visa expenses, all of which they incurred before relocating to the United States.

The guest workers, proceeding under the FLSA, filed a complaint in federal district court seeking to recover these expenses, as well as liquidated damages, costs, and attorney's fees. Decatur defended on grounds that the FLSA does not obligate it to reimburse the guest workers for their recruitment, transportation, or visa expenses. To this end, Decatur filed a motion to dismiss and/or for summary judgment; and the guest workers filed a cross-motion for summary judgment. In a single order, the district court denied Decatur's motion and granted the guest workers' motion in part, insofar as it allowed them to proceed with their FLSA claim.

Decatur asked the district court to certify its order for interlocutory appeal. The district court granted Decatur's motion. It identified, as a controlling issue of law as to which there is substantial ground for difference of opinion, the question "whether non-agricultural H-2B guestworkers are entitled to the protections of the FLSA." A motions panel of this court then permitted Decatur to file this interlocutory appeal under 28 U.S.C. § 1292(b). The district court's proceedings have not been stayed.

II.

We first must consider our jurisdiction over this interlocutory appeal. The guest workers contend that we lack jurisdiction—or, in the alternative, that our jurisdiction is limited to answering the single question identified by the district court as a controlling issue of law.

A motions panel's decision to allow an interlocutory appeal is not binding upon the panel that subsequently considers the appeal's merits; "the merits panel may conclude that the initial decision to hear the appeal was, or was later rendered, improvident. If the merits panel reaches that conclusion, it must vacate the earlier order granting leave to appeal and remand the case to the

district court." Id. at 1119, 1120 n.6. We therefore will review the motions panel's decision for improvidence.

We initially examine whether our jurisdiction over this appeal, if accepted, is limited to the single question identified by the district court as controlling. The Supreme Court has held quite clearly that it is not; 28 U. S. C. § 1292(b) grants jurisdiction "over any question that is included within the order that contains the controlling question of law identified by the district court." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 204 (1996). Here, the order for which the district court certified interlocutory appeal contains three questions in addition to the question that the district court identified as controlling: whether the FLSA requires an employer to reimburse guest workers for: (1) their recruitment expenses, (2) their transportation expenses, or (3) their visa expenses. Castellanos-Contreras v. Decatur Hotels, Inc., No. 06-4340, at 2 (E.D. La. July 19, 2007) (order denying motion to alter or amend judgment, granting motion to certify interlocutory appeal, and denying motion to stay pending interlocutory appeal). In the light of Yamaha, we may consider these questions as well as the threshold question whether H-2B guest workers are entitled to the FLSA's protections.

Whether the FLSA entitles guest workers to reimbursement for their recruitment, transportation, or visa expenses are, as we have noted, questions of first impression for this court. We therefore conclude these questions are controlling questions of law in this case, and as to which there is substantial ground for difference of opinion. The motions panel's decision to grant interlocutory review was not improvident. We now will consider the questions before us.

### III.

In response to the question identified by the district court, guest workers are entitled to FLSA protection. See In re Reyes, 814 F.2d 168, 170 (5th Cir.

1987) ("[T]he protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant."). Whether the FLSA entitles guest workers to reimbursement of recruitment, transportation, or visa expenses merits lengthier discussion.

A.

The guest workers contend that they are entitled to reimbursement because, under 29 U.S.C. § 203(m), the expenses they incurred are de facto deductions from cash wages received for their first week of work, leaving a balance owed them by Decatur. In other words, they liken the expenses (in an inverse way) to employer-furnished "facilities," such as room and board, which the employer may deduct from an employee's wages. As the Department of Labor has decided, however, this argument just does not work when the employer has neither furnished nor paid for anything. Indeed, the agency—which administers the FLSA—interprets § 203(m) as being inapposite to whether an employer must reimburse expenditures incurred by employees. See 73 Fed. Reg. 78020, 78040 ("[W]here an employer has paid for a particular item or service, under certain circumstances it may, pursuant to 29 U.S.C. 203(m), count that payment as wages paid to the employee. On the other hand, when an employee has paid for such an item or service, an analysis under 29 CFR 531.35 is required . . . .").

When confronted with an agency's interpretation of a statute that the agency administers, "we first determine 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" Martinez v. Mukasey, 519 F.3d 532, 543 (5th Cir. 2008) (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)). "In determining whether

Congressional intent is clear . . . we, of course, look first and foremost to the language of the statute." Id.

When we look to the statute, we find that § 203(m) defines wages as cash or "the reasonable cost . . . to the employer of furnishing [the] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." (Emphasis added). The provision's plain language thus permits employers flexibility in the method of paying employees; this section of the FLSA does not, contrary to the guest workers' suggestion, impose liability upon employers for expenses that employees incur. See Donovan v. Miller Props., Inc., 711 F.2d 49, 50 (5th Cir. 1983) (per curiam) ("[S]ection 3(m) of the Fair Labor Standards Act, 29 U.S.C. § 203(m), . . . allows an employer to credit toward its obligation to pay the minimum wage 'the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities' . . . .") (emphasis added). Section 203(m) provides no ground for Decatur to have violated the FLSA by refusing to reimburse the guest workers for recruitment, transportation, and visa expenses that they incurred.

B.

We thus turn to the argument that Decatur's failure to pay these pre-employment expenses encumbered the guest workers' wages, so that Decatur did not pay the wages "finally and unconditionally or 'free and clear'":

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of

> the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35; see 73 Fed. Reg. 78020, 78040.

The Department of Labor states that "[i]t is a necessary condition to be considered a 'kick-back' that an employee-paid expense be primarily for the benefit of the employer." 73 Fed. Reg. 78020, 78040. We defer to an agency's formal interpretation of the agency's regulation unless the interpretation is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997).

Section 531.35 provides illustrations of "kick-backs" but does not set out a standard for determining whether an expense is a "kick-back." The Department of Labor's interpretation fills this gap, explaining that a necessary—but not necessarily sufficient—condition for an employee-paid expense to be a "kick-back" is that the expense must be primarily for the employer's benefit. As the Department of Labor further explains, an employee-paid expense is primarily to the employer's benefit if it is an incident of and necessary to the employment, or, stated differently, if it shifts an employer's business expense to the employee. See 73 Fed. Reg. 78020, 78038, 78041. The agency's explanation of its ambiguous regulation is neither plainly erroneous nor inconsistent with the regulation. This circuit's precedents also are in accord. See Mayhue's Super Liquor Stores, Inc. v. Hodgson, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that an employer violated 29 C.F.R. § 531.35 when it imposed a condition of employment on employees that "tended to shift part of the employer's business expense to the employees").

We now consider whether the guest workers are entitled to reimbursement of their recruitment, transportation, or visa expenses.

1.

We begin with the transportation expenses. The Department of Labor's December 2008 interpretation of the FLSA discusses specifically whether transportation expenses that guest workers incur to relocate from foreign countries to the United States are primarily for the benefit of the employer. See 73 Fed. Reg. 78020, 78040-41. It considers a series of arguments, including every argument that the parties have raised in this case, and concludes that "The Department does not believe that an H-2B worker's payment of his or her own relocation expenses constitutes a 'kick-back' to the H-2B employer within the meaning of 29 CFR 531.35." 73 Fed. Reg. 78020, 78040; accord. id. at 78041.

This interpretation is neither plainly erroneous nor inconsistent with 29 C.F.R. § 531.35, which does not address the specific issue of guest workers' transportation expenses.[3] With deference to the Department of Labor's interpretation of its own regulation, we hold that the FLSA does not obligate Decatur to reimburse the guest workers for their transportation expenses.[4]

2.

In the same interpretation of the FLSA and its implementing regulations, the Department of Labor classifies visa expenses as "worker expenses" for which

---

[3] Consequently, we cannot accept the holding of Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228 (11th Cir. 2002). In Arriaga, the U.S. Court of Appeals for the Eleventh Circuit held that an H–2A employer must reimburse H–2A workers for their transportation expenses. District courts later extended Arriaga to the H–2B context, but the Department of Labor's December 2008 interpretation of its FLSA regulations rejects the entire line of cases. See 73 Fed. Reg. 78020, 78040 ("Arriaga and the district courts that followed its reasoning in the H–2B context misconstrued the Department's regulations and are wrongly decided.").

[4] Because we hold that the FLSA does not obligate Decatur to reimburse the guest workers for their transportation expenses, we do not consider Decatur's argument in the alternative that, even if the FLSA otherwise purports to obligate reimbursement, the Portal-to-Portal Act and Immigration and Nationality Act nevertheless bar recovery.

reimbursement is not required. See 73 Fed. Reg. 78020, 78039 ("The Department will continue to permit employers, consistent with the Fair Labor Standards Act (FLSA), to make deductions from a worker's pay for the reasonable cost of furnishing housing and transportation, as well as worker expenses such as passport and visa fees . . . .").

That 29 C.F.R. § 531.35 does not require employers to reimburse visa expenses that guest workers incurred is neither plainly erroneous nor inconsistent with the regulation. Although the regulation does not address employers' obligation to reimburse guest workers these expenses, other regulations clarify that employee-paid expenses to obtain H-2B visas are worker expenses not primarily to the employer's benefit. See 22 C.F.R. §§ 40.1(I)(1) (requiring nonimmigrant visa applicants, such as the guest workers here, to submit processing fees when they apply for visas). The expense of applying to become a sponsoring employer of H-2B employees, by contrast, is primarily to the employer's benefit. See 8 C.F.R. §§ 103.7(a), 103.7(b)(1), 214.2(h)(2)(i)(A) (requiring, collectively, that a U.S. employer submit certain forms and filing fees to become an H-2B visa sponsor). These regulations, which assign H-2B visa processing fees to visa applicants and H-2B sponsorship-application fees to employers, show that the visa expenses at issue here were not primarily for Decatur's benefit. We defer to the Department of Labor's interpretation of its own regulation, and we hold that Decatur has no FLSA responsibility to reimburse the guest workers for the visa expenses that they incurred.

3.

Finally, we consider whether the FLSA obligates Decatur to reimburse its guest workers for the expenses that they incurred with foreign recruitment companies. The FLSA's provisions do not require reimbursement of the employee-incurred expenses. See 29 U.S.C. § 201 et seq. Neither do the FLSA's implementing regulations—unless the expenses were "kick-backs" to Decatur.

See 29 C.F.R. § 531.35. As discussed above, the expenses were not kick-backs unless they were primarily to Decatur's benefit—or, stated differently, unless they were Decatur's business expenses that could not be shifted to the guest workers.

Our examination and assessment of this question lead us to conclude that recruitment expenses were not part of Decatur's business expense: During the time period relevant to this case, no statute or regulation required H-2B employers to reimburse such expenses. The expenses differed in all fundamental characteristics from the expenses that our court has labeled "kick-backs." See Mayhue's Super Liquor Stores, Inc. v. Hodgson, 464 F.2d 1196, 1199 (5th Cir. 1972) (deduction from cashiers' wages to pay for every shortage in employer cash-register accounts, regardless of the reason for the shortage); Brennan v. Veterans Cleaning Serv., Inc., 482 F.2d 1362, 1370 (5th Cir. 1973) (employee's wage deduction in favor of employer to recover the cost of a wrecked company truck).[5] Furthermore, the expenses were not business expenses of Decatur's by custom or practice of Decatur's industry. In sum, there is no basis in custom, practice, or law to include the recruitment expenses as part of Decatur's business expense, and Decatur had no FLSA obligation to reimburse the guest workers for them.

This understanding of Decatur's obligations at the relevant time of this lawsuit is reflected by two new regulations that, for the first time, address foreign recruitment companies' unscrupulous practices in recruiting workers to participate in the H-2B visa program. Effective January 18, 2009, the

---

[5] The recruitment expenses here were incurred by the guest workers without Decatur's knowledge or approval. They were incurred often, if not always, before the guest workers learned of Decatur. Furthermore, the guest workers enjoyed the benefit of the recruitment companies' guidance in applying for H-2B visas and in arranging transportation to the United States. Unlike Mayhue's and Veterans Cleaning Service, Decatur was simply not shifting an expense that was for the primary, if not sole, benefit of the employer to the employees.

Department of Labor requires an employer seeking H-2B labor certification to attest that "[t]he employer has contractually forbidden any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2B workers to seek or receive payments from prospective employees, except as provided for in DHS regulations at 8 CFR 214.2(h)(5)(xi)(A)." 20 C.F.R. § 655.22(g)(2). Also effective January 18, 2009, the Department of Homeland Security forbids an employer, employer's agent, recruiter, or similar employment service from collecting any "job placement fee or other compensation (either direct or indirect)" from a foreign worker as a condition of an H-2B job offer or as a condition of H-2B employment. 8 C.F.R. § 214.2(h)(6)(i)(B).[6] These regulations may well influence whether H-2B employers must reimburse the recruitment expenses of future guest workers, but they do not apply retroactively to the expenses of the guest workers here. Furthermore, because the regulations for the first time forbid an H-2B employer from permitting guest workers to bear such recruitment expenses, they demonstrate that the guest workers' recruitment expenses incurred long before the regulations became effective were not part of Decatur's business expense.

Finally, our conclusion is not disturbed by the one case that the guest workers cite holding recruitment expenses can be part of an employer's business expense. See Rivera v. Brickman Group, 2008 U.S. Dist. LEXIS 1167, at *47-*50 (E.D. Pa. Jan. 7, 2008). The employer there, Brickman, required guest workers to hire a particular recruitment company, which charged them fees. See id. at *48-*49. Because the employer required the guest workers to use the

---

[6] This regulation does not prohibit an H-2B visa sponsor from requiring guest workers to pay for transportation and visa expenses. See 8 C.F.R. § 214.2(h)(6)(i)(B) (excepting from its prohibition of worker-incurred expenses "the lower of the actual cost or fair market value of transportation to such employment and any government-mandated passport, visa, or inspection fees, to the extent that the passing of such costs to the beneficiary [guest worker] is not prohibited by statute, unless the employer, agent, facilitator, recruiter, or similar employment service has agreed with the beneficiary that it will pay such costs and fees").

recruitment company, the court concluded "that fees associated with Brickman-designated workers' representatives [we]re costs 'primarily for the benefit of the employer,' and that Brickman, therefore, was not allowed to pass those costs along [to the guest workers] to the extent that doing so reduced their wages below the FLSA minimum." Id. at *50.

Assuming the correctness and continued validity of that case's reasoning, the case is distinguishable. Here, there is no evidence that Decatur even knew about the foreign recruitment companies, much less that the companies charged a fee to the guest workers as a condition of receiving an offer of employment. Decatur paid Pickering $300 per job position filled, which was itself in the nature of an employer-paid recruitment fee. The record does show that the guest workers knew of no way to obtain employment with Decatur other than to go through the recruitment companies; and circumventing the companies and their fees might have been a factual impossibility. But the record also shows that Decatur did not require, or approve, any guest worker to pay any sum to anyone as a condition of an H-2B job offer or as a condition of H-2B employment.

For all of these reasons, we hold that the FLSA does not obligate Decatur to reimburse the guest workers for their recruitment expenses.

## IV.

In sum, we hold that Decatur incurred no FLSA liability to reimburse its guest workers for the recruitment fees, transportation costs, or visa fees that they incurred before relocating to the United States. We therefore REVERSE the district court's order that denied Decatur's motion to dismiss and/or for summary judgment and that granted in part the guest workers' motion for summary judgment. We REMAND the case with instructions that it be dismissed.

REVERSED and REMANDED.