*396 HAYNES, Circuit Judge,
joined by EDITH H. JONES, Chief Judge, and E. GRADY JOLLY, JERRY E. SMITH, EMILIO M. GARZA, BENAVIDES, OWEN and LESLIE H. SOUTHWICK, Circuit Judges, in full; joined by KING, W. EUGENE DAVIS, CARL E. STEWART and PRADO, Circuit Judges, as to Section III.A. only:
A group of hotel workers present in this country under H-2B visas[2] (“the Workers”) sued Decatur Hotels and Patrick Quinn (collectively “Decatur”) alleging violations of the Fair Labor Standards Act (“FLSA”). Decatur moved to dismiss and for summary judgment, and the Workers moved for partial summary judgment. In a single order, the district court granted the Workers’ motion in part and denied Decatur’s motions. Thereafter, the court certified that order for interlocutory appeal to this court. On appeal, a panel of this court reversed the district court and rendered judgment for Decatur. See Castellanos-Contreras v. Decatur Hotels LLC, 559 F.3d 332 (5th Cir.), withdrawn and replaced by 576 F.3d 274 (5th Cir.2009). En banc review was granted, thus vacating the panel opinion. Castellanos-Contreras v. Decatur Hotels LLC, 601 F.3d 621 (5th Cir.2010). We now REVERSE the district court’s order denying Decatur’s motion and REMAND for entry of judgment in favor of appellants.
I. Facts and Procedural Background
In the wake of the devastation wrought upon the city of New Orleans by Hurricane Katrina, Decatur found itself unable to hire a sufficient number of American workers to staff its hotel properties. It was solicited by Virginia Pickering, who had a business known as Accent Personnel Services, to use her service to navigate the regulations necessary to allow Decatur to legally hire workers from other countries. Pickering also had a business known as VP Consultants that provided data about employers seeking foreign workers to various foreign recruitment companies. The Workers allege these foreign recruitment companies charged them to provide information about U.S. companies seeking foreign workers and the procedures for obtaining such jobs and securing necessary visas.
The Workers consist of one hundred people[3] from various Latin American countries who came to New Orleans on H-2B visas to work at Decatur’s hotels in housekeeping and other service roles. The Workers allege they were required to pay (1) placement fees charged by various recruitment companies, (2) their own visa-application fees, and (3) all transportation expenses necessary to relocate to the United States. The parties do not dispute that Decatur did not reimburse the Workers for these expenses. The parties also do not dispute that Decatur paid its own H-2B application fees and the recruitment fees Pickering and Accent charged it.
All parties agree that Decatur paid the Workers more than the minimum wage should the court find Decatur was not required to reimburse the disputed expenses. However, the Workers argue that federal law requires Decatur to reimburse them for their travel expenses, visa fees, and recruitment payments during their first week of work, failing which, such sums must be deducted from the first week’s wage before calculating whether a *397 minimum wage, under the FLSA, was paid. Contending that these deductions took them pay below the minimum wage, the Workers sued Decatur under the FLSA.
In the district court, Decatur moved for summary judgment, contending that it was not required under the FLSA (or any other applicable law) to reimburse the travel, visa, and recruitment expenses in question. For their part, the Workers moved for summary judgment contending that the court was required to deduct the disputed expenses as part of the minimum wage calculation and that, under that calculation, Decatur had violated the FLSA. In a single order, the district court granted the Workers’ motion in part and denied Decatur’s motion entirely. The district court held that the only remaining issues were the strictly mathematical calculations of wages actually paid and, should that yield a finding of liability, the amount of damages due. Thereafter, it certified this order under 28 U.S.C. § 1292(b) for interlocutory appeal, and a motions panel of this court granted leave to appeal.
The parties and the en banc court agree that the FLSA applies to the Workers in the situation before the court. However, the parties disagree on the threshold question of whether this court has jurisdiction to consider this appeal and, unsurprisingly, on the merits question of whether the disputed expenses can or should be deducted as part of the FLSA calculation. A panel of this court opted to utilize its discretion to exercise jurisdiction in this case and ultimately found that Decatur was correct on the merits. After granting en banc rehearing and following reargument of the case, we now issue this opinion, again finding jurisdiction and reversing the district court on the merits.
II. Standard of Review
The court reviews its own jurisdiction de novo. Nehme v. INS, 252 F.3d 415, 420 (5th Cir.2001).
The court reviews certified orders de novo. Tanks v. Lockheed Martin Corp., 417 F.3d 456, 461 (5th Cir.2005). Under 28 U.S.C. § 1292(b), a grant or denial of summary judgment is reviewed de novo, applying the same standard as the district court, First Am. Bank v. First Am. Transp. Title Ins. Co., 585 F.3d 833, 836-37 (5th Cir.2009), but review only extends to controlling questions of law, Tanks, 417 F.3d at 461. Further, the court’s inquiry “is limited to the summary judgment record before the trial court.” Martco Ltd. P’ship v. Wellons, Inc., 588 F.3d 864, 871 (5th Cir.2009). The court must view the evidence in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and the movant has the burden of showing this court that summary judgment is appropriate, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Bolton v. City of Dallas, 472 F.3d 261, 263 (5th Cir.2006); see Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
III. Discussion
A. Jurisdiction
The jurisdiction question presented to the en banc court breaks down into two *398 parts: (1) is there appellate jurisdiction to reach any question other than whether the FLSA generally applies to the Workers (i.e., do we have the power to hear the issues Decatur presents), and, if so, (2) should we exercise our discretion to hear this appeal? We address each question in turn.
1. Appellate Jurisdiction
The Workers contend that the district court only certified the question of whether the FLSA generally applies to the Workers, ie., were the Workers entitled to be paid the minimum wage? In turn, they argue that this question is not one “as to which there is a substantial ground for difference of opinion” and, thus, they contend that we lack jurisdiction at all. As a fall back position, they contend that, at most, we have jurisdiction to decide only this threshold question but not the question of whether federal law requires reimbursement of the expenses in question. Decatur contends that jurisdiction is proper because the order certified necessarily includes consideration of the “merits” question of whether the disputed expenses are ever chargeable against wages paid. We agree with Decatur.[4]
The district court granted in part the Workers’ motion for summary judgment and denied Decatur’s motion for summary judgment in the single order that is the subject of the certified interlocutory appeal. In order to grant the Workers’ motion and deny Decatur’s motion, the district court had to examine whether the expenses in question were of the kind for which reimbursement — to the extent necessary to stay at or above minimum wage — is required by the law. The district court itself stated that it considered these matters to be “factual issues,” ie., that the law provides for their recovery depending on the facts of a given case. In deciding that there were “fact questions” on these issues, the district court necessarily decided that such expenses could sometimes be reimbursable, at least under certain facts. If, as a matter of law, they are not, the district court’s order would be incorrect.
Under § 1292(b), it is the order, not the question, that is appealable. Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); see Melder v. Allstate Corp., 404 F.3d 328, 331 (5th Cir.2005) (raising argument in district court deemed sufficient to render it “fairly included” in the certified order); Brabham v. A.G. Edwards & Sons, Inc., 376 F.3d 377, 380 n. 2 (5th Cir.2004) (reaching alternative grounds addressed in the certified order but omitted from the list of certified questions); Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC, 251 F.3d 1069, 1070 n. 4 (5th Cir.2001) (same); see also Schlumberger Techs. v. Wiley, 113 F.3d 1553, 1557 n. 6 (11th Cir.1997) (holding that, if an issue is contained within the order from which the interlocutory appeal is taken, the district court’s refusal to certify that issue does not defeat court of appeals’ jurisdiction over that issue). If the district judge makes certification as provided, “[t]he Court of Appeals ... may ... permit an appeal to be taken from such order.” 28 U.S.C. § 1292(b) (emphasis added). Section 1292(b) limits this court’s jurisdiction over interlocutory appeals to reviewing “questions that are material to the lower court’s certified order.” Adkinson v. Int’l Harvester Co., 975 F.2d 208, 212 n. 4 (5th Cir.1992); see Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976, 983 *399 n. 16 (5th Cir.1985) (“Thus, the appellate court may address all issues material to the order and is not limited to consideration of the ‘controlling question.’ This is especially so when the issues outside the ‘controlling question’ provide grounds for reversal of the entire order.” (citations omitted)); see also J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 115 (2nd Cir.2004) (“We are not necessarily limited to the certified issue, as we have the discretion to consider any aspect of the order from which the appeal is taken.”); McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1255-56 (11th Cir.2004) (“[W]e have the power to ‘review an entire order, either to consider a question different from the one certified as controlling or to decide the case despite the lack of any identified controlling question.’” (quoting Yamaha, 516 U.S. at 205, 116 S.Ct. 619)); Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1455 (6th Cir.) (“[E]ven those issues not properly certified are subject to our discretionary power of review if otherwise necessary to the disposition of the case.”), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).
The district court’s conclusion that there were fact issues was based upon its finding that the expenses in question could be reimbursable. If it is true that the expenses are reimbursable, then liability to the Workers depends upon calculating what each Worker paid for the disputed expenses, subtracting that figure from what each Worker was paid after his/her first week, and dividing the remaining amount by the hours worked. If that amount is above the minimum wage, no liability attaches. See generally 29 C.F.R. § 531.36 (2010); see also Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228, 1237 n. 11 (11th Cir.2002) (providing an example of an FLSA minimum wage calculation). If it falls below the minimum wage, then damages are based at least in part on this calculation of the “back pay” owed to the employee. See 29 U.S.C. § 216(b) (2010). Thus, the predicate finding that the disputed expenses are reimbursable costs that the employer owes the Workers is critical and material to the district court’s conclusion that there are fact issues. However, the threshold question of whether such expenses are, as a category, reimbursable is a legal question that can properly be the subject of interlocutory review. We conclude that we have appellate jurisdiction to review the question of whether the travel, visa, and recruitment expenses in question are required to be reimbursed as part of the minimum wage calculation under the FLSA.
2. Discretion
The conclusion that we have the power to consider these questions does not end our jurisdictional analysis. Interlocutory review under § 1292(b) is not mandatory; rather, it is discretionary. Thus, we must consider whether we should address these questions at this stage.
Suffice it to say that this is a question about which reasonable jurists can — and, in the case of this court, do — debate. A motions panel of this court permitted Decatur to pursue this appeal, and the original panel exercised its discretion to hear the appeal. Others on our court might have had a different take had they been on either panel. But we are no longer at the beginning of this case; instead, we are very far along. Considerable time has passed, two panel opinions have issued, and the parties have briefed the merits three times: to the original panel, in connection with the rehearing petitions, and in merits briefing to the en banc court. Additionally, this case has been the subject of two oral arguments. After so much time and effort has been expended by both the parties and the court as a whole, the discretionary decision now becomes much dif *400 ferent, and the majority of the court agrees it should be resolved in favor of hearing the merits.
B. The Merits
Turning then to the merits, we address each category for which the Workers claim reimbursement is required: (1) inbound travel expenses; (2) visa expenses; and (3) recruitment expenses.
1. Inbound Travel and Visa Expenses
No statute or regulation expressly states that inbound travel expenses must be advanced or reimbursed by an employer of an H-2B worker. There are laws that say that outbound travel expenses (ie., return) must be paid for H-2B workers under certain circumstances and that inbound expenses for H-2A workers require reimbursement,[5] but no statute or regulation expressly requires reimbursement for inbound travel for H-2B workers. See 8 U.S.C. § 1184(c)(5)(A) (requiring payment of outbound transportation costs in certain circumstances for H-2B workers); 20 C.F.R. § 655.102(b)(5)(I) (2009) (requiring payment of inbound transportation costs in certain circumstances for H-2A workers). Silence on this issue, in the face of these specific laws governing transportation, is deafening.
Similarly, no law or regulation provides that fees for the employee side of the visa application process must be paid by the employer. See 22 C.F.R. § 40.1(l)(1) (2010) (requiring non-immigrant visa applicants, such as the Workers here, to submit processing fees when they apply for visas). It is undisputed that Decatur paid its own fees for the employer side of the process— the application to hire H-2B workers. See 8 C.F.R. §§ 103.7(a), 103.7(b)(1), 214.2(h)(2)(i)(A) (2010) (requiring, collectively, that a U.S. employer submit certain forms and filing fees to become an H-2B visa sponsor).
While this lack of law would seem to end the matter as to both the travel and visa expenses, the Workers advance various arguments in support of their reimbursement claim which we now address. First, the Workers argue that both expenses are “specifically required for performance of the employer’s particular work” because the employee must have a visa and must get to the employer in order to work legally. In short, they cannot “use” the transportation and visa outside the context of that employment. They contend that these expenses are “primarily for the benefit and convenience of the employer.” Hence, they argue that these expenses constitute “tools of the trade” pursuant to 29 C.F.R. § 531.35 (2010),[6] such that their payment of these expenses are “de facto deductions” from their wages.
This argument stretches the concept of “tools of the trade” too far. Our precedents look to the nature of disputed expenses rather than simply declaring every *401 cost that is helpful to a given job an employer expense. Mayhue’s Super Liquor Stores, Inc. v. Hodgson, 464 F.2d 1196, 1199 (5th Cir.1972) (asking whether an act tended to shift employer expenses); Brennan v. Veterans Cleaning Serv., Inc., 482 F.2d 1362, 1369 (5th Cir.1973) (assessing various claimed expenses by analogy to other expenses previously deemed not properly chargeable). A visa and physical presence at the job site are not “tools” particular to this “trade” within the meaning of the applicable regulations. See also 29 C.F.R. § 531.32 (2010) (describing items like safety caps, explosives, lamps, electric power, company police or security, taxes and insurance on employer buildings, railway fare for maintenance-of-way railway workers, and uniforms as “other facilities” not subject to deduction from the employees’ wages).[7]
Second, the Department of Labor, briefing as an amicus in support of the Workers, also points to its own recent “interpretation” as informing whether travel and visa expenses are covered under the FLSA.[8] However, the Department’s Field Assistance Bulletin No. 2009-2 (“Bulletin”) was issued long after the events in question. The general rule, applicable here, is that changes in the law will not be applied retroactively when the result would be that “new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard.” Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 720, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Thus, even “ ‘congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.’ ” Landgraf v. USI Film Prods., 511 U.S. 244, 272, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). Whatever deference may be due to the Department’s informally promulgated Bulletin in the future, it does not itself in any way purport to apply retroactively.[9] Ac *402 cordingly, we decline to apply it to the situation here.
The dissenting opinion focuses on the Department’s previous position that relocation expenses paid by the employer could not be deducted from wages. Significantly, the Department did not address the issue of reimbursing relocation expenses until 1994. At that point, the Department announced it would analyze the issue of reimbursement and adopted a position of non-enforcement during its deliberations. The first time the Department specifically spoke to reimbursement in the context of alleged “kickbacks” like those at issue here was its announcement in 2008 that it would not require reimbursement.[10] The Department then reversed itself 98 days later to assert for the first time that reimbursement was required. Carefully read, the Department of Labor letters did not in fact include or promote a “reimbursement required” position until the Department informally changed course in 2009. In fact, none of the letters cited in the dissenting opinion expressed a clear, unequivocal stance that employee-incurred relocation costs constitute a kickback. Thus, this inconsistency and ambiguity— properly afforded the deference discussed in the dissenting opinion — did not create any affirmative duty to reimburse and, moreover, merely underscores the problem with the suggestion that we retroactively apply the Department’s most recent guidance.
Finally, the Workers cite to the Eleventh Circuit’s decision in Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228 (11th Cir.2002), to support their position. Am *403 aga, however, dealt with H-2A workers, not H-2B workers. Id. at 1232-33. Historically, H-2A and H-2B workers have been treated differently. Compare 20 C.F.R. §§ 655.90-113 (2007) (broadly setting out a distinct regulatory regime for the management of the H-2A program) with 20 C.F.R. §§ 655.1-.4 (providing the regulatory regime for H-2B workers) (2007)[11]; see also Sweet Life v. Dole, 876 F.2d 402, 406 (5th Cir.1989) (explaining that the H-2 program was specifically redesigned by Congress in 1986 to “separat[e] agricultural from nonagricultural workers in the administrative scheme”). Indeed, the regulations specifically provide some transportation reimbursement obligation for H-2A workers while remaining silent on similar expenses incurred by H-2B workers. Thus, Arriaga’s reasoning does not control here.
Accordingly, we conclude as a matter of law that these expenses are not reimbursable,[12] and the district court erred in denying Decatur’s motions on these points.
2. Recruitment Expenses
The Workers raise some of the same arguments regarding the recruitment expenses, and we will not repeat our analysis of those arguments.[13] Again, the statute and regulations are silent, so we turn to considering the Workers’ additional arguments regarding recruitment expenses.
The Workers argue that they were required to pay recruiting fees and, therefore, those fees should be considered “part of the job,” citing Rivera v. Brickman Group Ltd., Civ. No. 05-1518, 2008 WL 81570 (E.D.Pa. Jan. 7, 2008). They contend that fact issues are presented as to the nature of the payments and whether they were required by Decatur. In response to Decatur’s motion for summary judgment, the Workers proffered no evidence to support the concept that Decatur required any recruitment fees to be paid to the foreign recruiters or that it required the Workers to use these recruiters to apply to Decatur. The fact that the Workers benefitted from these services by finding jobs with Decatur does not suggest that Decatur was the one who required their use of job placement firms.[14]
*404 Moreover, the claim asserted rests on the argument that when the Workers paid for recruiting services in their home countries, they paid an expense belonging to the employer. As with visa costs, both employers and employees contribute to the recruiting cost of using the program: employers pay recruiters to help them navigate the visa application process and locate workers in foreign countries (here, Decatur hired Accent), and employees pay recruiters in their home countries to help them find work in the United States. The division of payment for each party’s respective benefit indicates, as in the visa context, that the Workers’ use of recruiters in their own countries was not Decatur’s business expense. Again, while recruiters in general may benefit both parties, the payment for that benefit can be (and has here been) apportioned to each party appropriately. It is undisputed that Decatur paid the fees it was charged by Accent for recruiting services. Thus, no material fact issue was raised on this point.
Newly enacted Department of Labor regulations[15] (promulgated after the time in question) actually support the conclusion that recruitment expenses were not reimbursable at the time. These regulations provide protection for guest workers from unscrupulous recruiters by requiring employers to contractually obligate those with whom they work not to charge employees recruiting fees. These new regulations actually suggest that the expenses in question were not previously to be charged against the employers. If they were to be so charged previously, there would be no need to protect the employees as provided in the new regulations.
In sum, Decatur was not required to reimburse the Workers for the fees they paid to the various job placement firms. Consequently, the district court erred in denying Decatur’s motions on this point.
Accordingly, we REVERSE the district court’s judgment and REMAND for entry of judgment in favor of appellants.
REVERSED and REMANDED for entry of judgment.

. The term "H-2B visa” refers to a visa authorized by 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

. Originally, three foreign workers filed suit seeking to represent themselves and similarly situated H-2B Decatur workers. Ninety-seven such workers filed notices of consent to participate in the lawsuit.

. Moreover, the Workers conceded at oral argument that the jurisdictional question that remains before the court is purely prudential.

. As defined by 8 U.S.C. § 1101(a)(15)(H)(ii)(a), "H-2A” workers include only those individuals temporarily relocating to the United States to perform "agricultural labor and services." Conversely, "H-2B” workers include only those individuals temporarily relocating to the United States to perform other non-agricultural labor or services.

. The Workers also contend that wages must be paid “free and clear” and that the singular exception contained in 29 U.S.C. § 203(m) supports their position. See 29 U.S.C. § 203(m) (permitting an employer to deduct from wages the cost of furnishing meals and lodging). Section 203(m) does not directly impose liability upon employers for expenses that employees incur, and it has nothing to do with travel or visa expenses. In short, the Workers’ "free and clear” argument begs the question of whether these are expenses that the employer is legally required to bear — a question we answer in the negative.

. Additionally, the Workers' argument that these expenses are specific and unique to the employer in question is contradicted by the federal regulation governing the use and transferability of H-2B visas: “If the alien is in the United States and seeks to change employers, the prospective new employer must file a petition on Form I-129 requesting classification and an extension of the alien's stay in the United States.” 8 C.F.R. § 214.2(h)(2)(i)(D) (2010). In other words, the employee does not have to return to his or her home country and start from the beginning in order to change employers once in the United States. It is interesting to note that it appears that at least some of the Workers are still in the United States despite the seemingly temporary nature of the H-2B visa and the recent fifth anniversary of Hurricane Katrina.

. Notably, the Workers make no effort to rely upon the Department's recently revised "interpretations” in support of their own position. In fact, in originally requesting rehearing, the Workers argued that casually promulgated interpretations of the FLSA— like the one now at issue — should not inform the court's understanding of the statute.

. We acknowledge that the regulatory landscape is now very different than it was just a few short years ago. See, e.g., 20 C.F.R. § 655.22(g)(2) (2010) and 8 C.F.R. § 214.2(h)(6)(i)(B) (2010). We express no opinion as to how our decision today affects those new regulations.
Moreover, we do not, as the dissenting opinion suggests, claim that the Secretary’s amicus briefing is entitled to no deference because the Bulletin and briefing were filed after the events giving rise to this suit. Rather, the Secretary contends, paradoxically, that the position of the Department has remained the same for fifty years save a 98-day period but also concedes that the Department publicly informed employers it would suspend the enforcement of FLSA standards relating to reimbursement issues from 1994 until 2008— when it concluded that reimbursement was not necessary. In short, we decline to engage in the ex post imposition of new duties that did not clearly exist at the time of the events *402 giving rise to this suit under the guise of Auer deference.

. The dissenting opinion argues that a 1986 Department letter produced in response to an employer’s effort to settle its outstanding liability constitutes an earlier pronouncement of the Department’s position. Properly read in context, it is not. The correspondence answers a specific question: whether the Department persisted in its belief that employers could not make transportation deductions that cut into the minimum wage, or, as the employer contended, it had recently adopted that position. The dissenting opinion's quoted language is nothing more than the administrator suggesting that reimbursement likely could be required under the facts of that case. Importantly, the decisions of the district court in the underlying case reveal: (1) the letter addressed agricultural workers(now properly categorized as H-2A workers); (2) the case involved direct payments by the workers to the employer for transportation expenses; and (3) the letter was issued as a rejection of the employer's attempts to find a way to settle its outstanding minimum wage liability — not a general inquiry into whether such liability existed. Thus, the 1986 letter is exactly the sort of post hoc rationalization in the context of active litigation that the Supreme Court warned will undercut the authority of such agency pronouncements. Auer v. Robbins, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).
Moreover, as a litigation document prepared in a very specific context, it is doubtful that even the most diligent employer could have readily accessed (or would have known to look for) this so-called "interpretation.” While not dispositive, it is noteworthy that the dissenting opinion would hold an employer liable under such a piece of random, litigation-specific correspondence where the affidavits of the very workers at issue in this case do not state that the Workers ever requested or expected reimbursement prior to this litigation. Even now, after all these years, if Decatur wanted to write a check, it would not know the amount. Yet the dissenting opinion would hold that Decatur should somehow have divined such a figure on its own within one week of the Workers starting their employment, no less, despite the fact that it had no reasonable way of determining it — according to the dissent — had a sua sponte duty to investigate the Workers’ costs and provide reimbursement of as yet untold sums during their first week on the job in order to avoid a Wage-Hour violation.

. The regulations cited have undergone substantial revision in recent years. The 2007 edition of the Code of Federal Regulations is cited because it was that version that the district court considered when it concluded that H-2A and H-2B workers were not sufficiently distinguishable to prevent Arriaga from applying to the instant case.

. Because we hold that the FLSA does not obligate Decatur to reimburse the Workers for their transportation expenses, we do not consider Decatur’s argument in the alternative that, even if the FLSA otherwise purports to obligate reimbursement, the Portal-to-Portal Act nevertheless bars recovery.

. It is noteworthy, however, that even Arriaga did not require reimbursement of the recruitment expenses.

. The Workers' suggestion that unresolved fact disputes prevent this court from considering this point is belied by the record. The affidavits submitted by some of the Workers indeed talk about going to foreign recruiters and being charged fees but in no way suggest that Decatur charged those fees or required their payment. Instead, the affidavits say that they were told by the foreign recruiter that they "had to pay for the cost of the program to be able to go and work for the Defendants.” The only tie between the foreign recruiter and Decatur comes in the Workers’ statement that they "understood that the [foreign recruiter’s] agency was an agency utilized by the Defendants for the recruitment of workers like me ....” The affiant’s "understanding,” without any stated basis for such "understanding” is no evidence of agency tying the foreign recruiter (such as UniverJobs) to Decatur. See Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir.1992) (holding that affidavits offered to support or oppose summary judgment must be based on personal knowledge to create a genuine issue of material fact); see also Fed. R. Civ. P. 56(e)(1). Nor is there any evidence of a contract between UniverJobs or the other foreign recruiters and Decatur. Thus, even if *404 we were to follow Rivera’s reasoning, it would not apply here.

. 20 C.F.R. § 655.22(g)(2) (2010) and 8 C.F.R. § 214.2(h)(6)(i)(B) (2010).