445 F.3d 532
 Johnathan JOHNSON, Plaintiff-Appellant,
v.
Glenn S. GOORD, Commissioner of the New York State Department of Correctional Services, Hans Walker, Superintendent & R. Nelson, Deputy Superintendent of Programs, Defendants-Appellees.
 Docket No. 03-249-PR.
 United States Court of Appeals, Second Circuit.
 Submitted: October 18, 2005.
 Decided: April 18, 2006.
 
 Plaintiff Johnathan Johnson, an inmate in the custody of the New York State Department of Correctional Services, appeals from a summary judgment entered in the United States District Court for the Northern District of New York (Eisele, J.)[1] dismissing Plaintiff's complaint under 42 U.S.C. § 1983. The judgment of the district court is affirmed because Johnson does not have a constitutional right to free postage for non-legal mail, and the prison directive regulating possession of stamps in the prison is reasonably related to a legitimate penological interest.
 Johnathan Johnson, Pine City, NY, pro se.
 Nancy A. Spiegel, Senior Assistant Solicitor General, Victor Paladino, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York) Albany, NY, for Defendants-Appellees.
 Before: KEARSE, MINER, and HALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 In January 1998, Plaintiff Johnathan Johnson ("Johnson"), who was then a prisoner at Auburn Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 against several employees of the New York State Department of Correctional Services ("DOCS"). Johnson's complaint challenged Directive 4422(d), which prevents certain inmates in keeplock from receiving stamps through the mail and provides that they can receive only one free stamp per month for personal use. Johnson alleges that because he does not have sufficient funds to purchase stamps from the prison commissary, the Directive deprives him of his rights under the First and Fourteenth Amendments to write letters to his family.
 
 
 2
 The Defendants moved for summary judgment, arguing that because an indigent inmate has no constitutional right to free postage for non-legal mail, and because DOCS Directive 4422 is reasonably related to the legitimate penological interest of maintaining security and order in the prison, Johnson could not maintain a cause of action under § 1983. In August 2003, the United States District Court for the Northern District of New York (Eisele, J.) granted Defendants' motion for summary judgment.
 
 
 3
 We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party, to determine whether the district court properly concluded that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.2003). In determining whether there are genuine issues of material fact, we are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir.2003) (internal quotation marks omitted).
 
 
 4
 To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must "'show that [an] official, acting under color of state law, caused the deprivation of a federal right.'" Coon v. Town of Springfield, Vt., 404 F.3d 683, 686 (2d Cir.2005) (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (alteration in Coon)). Under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir.2003). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail." Id. A prisoner's right to receive and send mail, however, may be regulated. See Davidson v. Mann, 129 F.3d 700, 702 (2d Cir.1997) (upholding the validity of a prison regulation limiting inmates' purchases of stamps for non-legal mail). Such regulation "`is valid if it is reasonably related to legitimate penological interests.'" Rodriguez v. James, 823 F.2d 8, 12 (2d Cir. 1987) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).
 
 
 5
 We agree with the Eighth and Eleventh Circuits that an indigent prisoner does not have a constitutional right to unlimited free postage for non-legal mail. See Van Poyck v. Singletary, 106 F.3d 1558, 1559-60 (11th Cir.1997); Hershberger v. Scaletta, 33 F.3d 955, 957 (8th Cir. 1994). Thus, Johnson cannot maintain a § 1983 action based on the defendants' failure to provide him with such postage.[2]
 
 
 6
 To the extent that Johnson claims that Directive 4422(d) has somehow "deprived him of his First Amendment right to send outgoing non-legal mail," Davidson, 129 F.3d at 701, this claim must fail because the regulation is reasonably related to legitimate penological interests. See Turner, 482 U.S. at 89, 107 S.Ct. 2254.
 
 
 7
 In Turner, the Supreme Court instructed that courts reviewing the validity of prison regulations should apply several factors. First, "there must be a `valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Id. Second, courts should assess "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90, 107 S.Ct. 2254. Third, courts should consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. Finally, courts should consider the challenged regulation in relation to proposed alternatives. Id. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation," whereas "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." Id.
 
 
 8
 Having reviewed DOCS Directive 4422(d) under Turner, we find that the Directive is reasonably related to valid penological interests. First, because stamps can be used as a form of currency in prison, they may become the object of unregulated prisoner transactions and therefore engender conflict among inmates. See Davidson, 129 F.3d at 702 ("Stamps have some of the attributes of currency, and a limit on the amount that may be present in cells obviously furthers the goals of avoiding thefts and disputes over them."). Therefore, a "valid, rational connection" exists between the regulation and DOCS' interest in maintaining security and order. Turner, 482 U.S. at 89, 107 S.Ct. 2254 (quotation marks omitted). Second, as an alternative to receiving only one free stamp per month, Johnson may have his friends or family send money, which can be used to purchase stamps from the commissary. Third, Johnson's proposed alternative — that friends and family be permitted to send stamps through the mail — would have a detrimental impact on prison officials, other inmates, and the prison system generally because it would require the use of already limited prison resources for inspection of those mailings. Inmate receipt of embossed envelopes and stamps presents a security concern because the adhesives of these items may contain visually undetectable amounts of drugs. In addition to the expense a prison would incur testing for such substances, "inmates might encounter delays in the processing . . . of high priority mail." Davidson, 129 F.3d at 702 (addressing Directive 4422). Moreover, as noted above, permitting prisoners to receive stamps sent by outsiders would interfere with the legitimate penological goals of reducing thefts, disputes, and unregulated prisoner transactions. Finally, for an inmate regulation to be valid, "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating" a prisoner's alleged needs. Turner, 482 U.S. at 90-91, 107 S.Ct. 2254. Johnson has not suggested any alternatives that would accommodate his rights at minimal cost to the legitimate penological interests of security and order. See id at 91, 107 S.Ct. 2254.
 
 
 9
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Hon. Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas, sitting by designation as a judge of the United States District Court for the Northern District of New York
 
 
 [2]
 As Johnson's action does not concern postage for legal mail, we do not express an opinion on that issue