# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2012

No. 10-20648

Lyle W. Cayce
Clerk

MARKS WELLS,

Plaintiff-Appellant

v.

RICK THALER, In his official capacity; KEVIN MAYFIELD, Individually and in his official capacity; ALFONSO CASTILLO, In his individual capacity; RICHARD A. GUNNELS, Individually and in his official capacity; DONALD E. MUNIZ, Individually and in his official capacity; LIEUTENANT ELIZABETH C. STAMBAUGH, Individually and in her official capacity; DEMETRIE PHIPPS, Individually and in his official capacity; LAURA M. BARNETT, In her official capacity, FRANK HOKE, Individually and in his official capacity; MICHAEL WHEELER, Individually and in his official capacity; DOCTOR LANETTE LINTHICUM, Individually and in her official capacity; ANTHONY WILLIAMS, Individually and in his official capacity; KIMBERLY COTTON, Individually and in her official capacity; THOMAS GOODSON, Individually and in his official capacity; WILLIAM SCOTT CHILDRESS, Individually and in his official capacity; BRUCE KALMAN, In his official capacity NATHANIEL QUARTERMAN, In his individual capacity, DAVID SWEETIN, In his official capacity,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-2288

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

No. 10-20648

PER CURIAM:[*]

In this civil rights case, Plaintiff-Appellant Mark Wells ("Wells") appeals the district court's grant of summary judgment in favor of the Defendants-Appellees. Wells brings claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, against various employees and officials of the Texas Department of Criminal Justice ("TDCJ") and the University of Texas Medical Branch in their official and individual capacities, seeking compensatory and punitive damages, as well as injunctive and declaratory relief. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Wells is a fifty-two year-old blind prisoner, who was convicted in 2006 upon a negotiated plea of aggravated sexual assault of a child. He was sentenced to ten years of imprisonment on August 28, 2006. Wells did not appeal his conviction and he has not filed post-conviction collateral attacks in either state or federal court. On October 19, 2006, Wells was transferred to the Estelle Unit, where he is currently confined.

In the current suit, Wells proceeds *pro se* and *in forma pauperis*, and he sues under 42 U.S.C. § 1983 and Title II of the ADA, claiming that the conditions in the Estelle Unit violate his constitutional rights of access to the courts and to the mail, and that the prison denied him the benefits of the Estelle Unit law library and Adaptive Resource Clinic due to his disability. Specifically, Wells claims that the alleged violations prevented him from filing his federal habeas petition and are currently preventing him from filing his Texas state habeas petition.[1] As to both claims, Wells seeks compensatory and punitive damages

---

[*] Pursuant to FIFTH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in FIFTH CIRCUIT RULE 47.5.4.

[1] The parties agree the Texas state habeas petition can still be filed.

2

No. 10-20648

against the Defendants-Appellees in their personal and official capacities, as well as injunctive and declaratory relief.

Plaintiff-Appellant Wells began accessing the law library in late June 2007, approximately eight months after he was transferred to the Estelle Unit. According to Defendant-Appellee Frank Hoke, TDCJ Access to Courts Program Supervisor, the law library at Estelle Unit maintains a list of volunteer offenders who are willing to provide assistance reading and writing, and offenders are permitted to schedule their research sessions with other offenders who will aid them. From June 2007 onwards, Wells took advantage of this service, and he regularly used the law library with the assistance of other prisoners. During the vast majority of these sessions, Wells was accompanied by another prisoner, Chris Cole. Cole, who is visually impaired, assisted Wells with his post-conviction legal research and read research material and legal mail to Wells using a closed-circuit enlargement television ("CCTV"). From June 2007 until late September 2007—when his federal habeas petition was due—Wells had over twenty legal research sessions with Cole, many lasting for several hours. During this time, Wells requested no accommodations other than being allowed to research with Cole.[2]

---

[2] Wells filed several grievances about the tables and chairs that he and Cole used while working together during August and September 2007. Although on appeal he cites the various disputes over the table and chairs as a grounds for his access to courts claim, arguing that he was denied access to a reader, Wells did not base any of his claims for relief in the district court on these particular events. Instead, in his summary judgment briefing and in his complaint, Wells seemed to concede that he was given access to readers, such as Cole, but argued that access to readers was insufficient. Any argument based on these earlier events is waived. *See Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 846 (5th Cir. 2010) ("An argument not raised before the district court cannot be asserted for the first time on appeal." (quotation marks and citation omitted)). Additionally, even if considered, a review of the various grievances indicates that Wells was not denied access to Cole during that time, but rather, that Wells believed that the seating arrangement was not the most convenient possible. These grievances show that Wells was permitted same-session visits with Cole, that the sturdier table for the CCTV was replaced after he complained, and that the CCTV was actually equipped with two chairs for joint research.

No. 10-20648

On September 27, 2007, the day his federal habeas petition was due, Wells filed a Step 1 grievance complaining that he was completely blind and was unable to do his legal research privately and independently.[3]  In his grievance, Wells stated that Cole had been assisting him with his post-conviction filings, but that he wanted a computer equipped with "screen reading software, text to [B]raille software, printers, scanners, servers, and network devices," so he could research on his own.  Wells stated such accommodations were necessary because he was worried other prisoners might comprise confidentiality, presumably regarding the nature of his underlying conviction.  Wells also stated that he had asked the law librarian for "law books and other legal research material on tape or in [B]raille" approximately two weeks earlier, but that the librarian had told him those resources were not available in the library.[4]

In a response to this grievance, on October 10, 2007, a prison official replied that Wells was not being denied any necessary adaptive aids because prison records indicated Wells was only blind in one eye and could see using the CCTV.  According to Hoke, when Wells first entered the TDCJ, the TDCJ was incorrectly informed that Wells could see in one eye and the law library relied on those records.[5]  On October 22, 2007, Wells filed a Step 2 Grievance, stating that he was unable to use the CCTV due to blindness in both eyes; he also

---

[3] The TDCJ utilizes a two-step grievance procedure.  *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (describing TDCJ administrative procedure).

[4] Wells also submitted a photocopy of a typed letter that he claims he mailed to Hoke on September 23, 2007, in which he states that he is totally blind and needs adaptive equipment to research independently.  The letter is hand-dated and there is no indication that it was ever received by Hoke.  Assuming for purposes of this motion that the letter was actually mailed and that Hoke received it, the letter requests the same accommodations that Wells made in his September 27th grievance.  Additionally, the letter would have been received by Hoke almost contemporaneously with that formal grievance.

[5] Other prison medicals records indicate that Wells had told the prison in December 2006 that he could see using the CCTV.

requested that the library provide JAWS[6] screen reading software, as well as independent access to Westlaw or Lexis Nexis legal research services.  On January 2, 2008, a different official replied, stating that Wells was already provided with adequate accommodations because he admitted that he was receiving reading and writing assistance through same-session visits with Chris Cole.  The official also noted that the library could provide a list of other prisoners who would assist Wells with reading and preparing filings.[7]

Other evidence in the record indicates that Frank Hoke followed up on Wells's request that Braille or audio versions of legal resources be provided by speaking with the reference librarian at the Texas State Law Library and the Blind and Physically Handicapped official at the Library of Congress.  Hoke states that neither institution was able to provide or had any knowledge of legal resources designed for the visually impaired like those Wells was requesting. It is also undisputed that the TDCJ does not make computers available to any offenders in the law library.

Over the next several months, Wells regularly visited the library with Cole, or another prisoner, David Willis, often multiple times per week and for several hours per visit.  There is no evidence in the record that Wells was ever denied access to the law library or the assistance of another prisoner during this time.  In March 2008, Wells filed a grievance requesting additional software on the computers in  the Adaptive Resource Clinic, stating that such software was needed so he could independently do legal research.  Wells's request was denied, and Estelle Unit records show that Defendant-Appellee Kimberley Smith-

---

[6] JAWS is a computer screen reader program that is designed for blind or visually impaired readers and stands for "Job Access with Speech."

[7] Wells also filed another grievance in October 2007, requesting that the law library provide trained paralegals, rather than prisoner readers. A prison official responded that the prisoner readers were adequate because they acquired training on the job.

No. 10-20648

Cotton, Program Manager of the Assistive Disability Services ("ADS"), discussed the request with Wells and told him that the Adaptive Resources Clinic was not designed to assist with legal filings.[8] Smith-Cotton filed an affidavit describing the Adaptive Resource Clinic, stating that the Clinic is designed to "teach very basic skills[,] such as how to type on a keyboard," and to provide assistance to offenders with simple tasks, such as reading or writing letters to family members. Smith-Cotton also provides uncontroverted testimony that Wells does not need computer training in the Clinic because he already knows how to type and use computers.

Previously, in December 2006, Wells discussed JAWS software with Defendant-Appellee Thomas Gooden, who is an Adaptive Resources instructor, and Wells requested that Gooden install JAWS software on the Adaptive Resources computers. Gooden testifies that the request was forwarded to his supervisor—Smith-Cotton—and Smith-Cotton states that Wells's request was considered, but that the prison determined that existing services met Wells's needs. Additionally, other evidence shows that Smith-Cotton explained to Wells that JAWS would not be helpful to him because it cannot read personal mail. Smith-Cotton also states that the Estelle Unit provides letter guides for visually impaired offenders, has a mechanical reader, and that ADS instructors are also available to help read and write letters. Prison records show that Wells declined letter writing assistance from an ADS caseworker.[9]

Plaintiff-Appellant Wells filed the current suit in July 2008. Essentially, Wells argues that the law library or Adaptive Resources Clinic should be

---

[8] Wells filed similar grievances in May and June 2008, and they were rejected on the same grounds.

[9] There is also evidence that Wells filed several grievances in April and May 2008 related to the letter writing resources available in the Adaptive Resources Clinic. These grievances were either rejected for failure to follow administrative rules, or because Wells did not attend meetings with ADS caseworkers to discuss his needs.

6

No. 10-20648

equipped with additional adaptive equipment, such as a current model computer with screen reading software, such as JAWS, as well as Braille or audio versions of legal resources and Westlaw or Lexis Nexis access. Wells argues that these accommodations are necessary because he wants to read his mail, complete legal research, and prepare legal filings independently and privately, rather than with prisoner assistance. The district court granted the Defendants-Appellees' motion for summary judgment, finding no disputed issues of fact, and it dismissed all of Wells's claims with prejudice. Wells timely filed an appeal.[10]

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party. *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010). Summary judgment is proper only when the movant demonstrates that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Fed. Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 122 (5th Cir. 2005).

## III. ANALYSIS

### A. Constitutional Claims

Section 1983 provides a private right of action for violations of federal law by those acting under color of state law. 42 U.S.C. § 1983. In claiming a constitutional violation, Wells first argues that he was denied access to the courts because he was unable to effectively research and prepare his federal and state collateral attacks. Wells missed the filing deadline for his federal habeas petition and he has not yet filed his Texas state habeas petition.[11]

---

[10] On appeal, Plaintiff-Appellant Wells also filed a motion for appointment of counsel, which was carried with the case.

[11] It is unclear whether Wells is also trying to sue the Defendants-Appellees for violations of Title II of the ADA under Section 1983. To the extent that he is, this claim must

No. 10-20648

It has long been recognized that prisoners enjoy the constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821–22 (1977). The Supreme Court has not, however, established that prisoners have a freestanding right to a law library or legal assistance. *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). Rather, access to a prison law library is only a means for assuring "a reasonably adequate opportunity [for an inmate] to file nonfrivolous legal claims challenging . . . convictions or conditions of confinement." *Lewis*, 518 U.S. at 356; *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997). Thus, claims alleging violations of a right of access to courts are not cognizable unless the inmate's position as a litigant was actually prejudiced by the denial of access. *McDonald v. Steward*, 132 F.3d 225, 230–31 (5th Cir. 1998). To prove an "actual injury," an inmate must prove that his ability to pursue a claim was hindered or barred by the defendant's actions. *See Lewis*, 518 U.S. at 351–52.

Here, the record shows that Wells had effective access to a law library at all relevant times. For example, the record shows that Wells was permitted to complete legal research and prepare filings with the assistance of a prisoner of his request, usually Cole or Willis, and that this accommodation was provided even before the TDCJ's information about Wells's vision was corrected. Wells offers no evidence indicating that the prisoners available to assist him were not competent or that he was not able to adequately prepare his filings after having materials read to him. *See Lewis*, 518 U.S. at 360 (stating that illiterate prisoners must be given only the "minimal help necessary to file particular claims that they wish to bring . . . "). Additionally, the record shows that Wells was permitted to access the library on a regular basis, often for long visits. Thus, Wells fails to offer evidence creating an issue of material fact on his access to courts claim. *Jones v. Greninger*, 188 F.3d 322, 325–26 (5th Cir. 1999) (per

---

be dismissed. *See D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 456–57 (5th Cir. 2010).

curiam) (finding law library access for several hours a week more than sufficient to meet constitutional requirements).[12]

Additionally, to the extent that Wells alleges that reliance on another prisoner violated a constitutionally protected privacy interest because his conviction might be revealed, Wells's argument fails because the details of his conviction are a matter of public record. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 490–91 (5th Cir. 2002) (stating that only disclosure of "intimate facts" constitutes a constitutional privacy violation); *see also Paul P. v. Verniero*, 170 F.3d 396, 403 (3d Cir. 1999) (stating that there is no constitutionally protected privacy interest in the details of one's conviction); *Eagle v. Morgan*, 88 F.3d 620, 625–26 (8th Cir. 1996) (same); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (same); *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) (same). Moreover, Wells does not offer any evidence showing that he is unable to use the library because the prisoners who assisted in reading or preparing filings leaked information about his offense or would harm him, or that the Estelle Unit failed to adequately protect him in the past from prisoners who pose a threat.

Further, even assuming that the Estelle Unit is somehow responsible for Wells missing the deadline on his federal habeas petition, Wells fails to show prejudice because he does not adequately allege grounds for an arguable claim

---

[12] Even if the various difficulties that Wells complained of in working with Cole in the fall of 2007 are taken into account, such as the arrangement of chairs or the table on which the CCTV machine was placed, Wells still fails to show that he was denied access to library resources. The right of access to the court "does not afford prisoners unlimited access to prison law libraries." *McDonald*, 132 F.3d at 230. Rather, "[l]imitations may be placed on library access so long as the regulations are 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Casey*, 518 U.S. at 361); *see also Eason v. Thaler*, 14 F.3d 8, 9–10 (5th Cir.1994) (right of meaningful access to courts may be validly narrowed under certain circumstances). Here, grievances show that smaller chairs were placed at the CCTV so an aisle in the library was not blocked and that the larger table was temporarily moved so a computer could be placed on it, but that the table was soon returned. The record does not suggest that Wells's access to Cole was ever terminated, even if they were forced to temporarily work together while sitting at separate tables.

to relief. *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009). In his more definite statement, Wells says that he would have asserted "[a]llegations of misconduct, lack of evidence, and ineffective assistance of counsel" in his habeas petition. In his opposition to summary judgment, Wells adds a handful of vague and contradictory complaints about his attorney's performance and the evidence against him.

It is well-established that a valid guilty plea waives all nonjurisdictional defects, including an ineffective assistance of counsel claim, unless the ineffective assistance claim affects the voluntariness of the plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).[13] Based on his sparse allegations, Wells does not sufficiently state a claim for ineffective assistance of counsel that has an arguable chance of success. *See Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002) (stating that allegations in access to courts claim must show that the underlying claim is "arguable," and that the underlying claim must be adequately pled "just as if it were being independently pursued"); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (to be adequately alleged a claim must allege sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The district court was, therefore, correct in finding the allegations insufficient.

Second, Plaintiff-Appellant Wells argues that the Estelle Unit violated his constitutional rights by preventing him from sending and receiving mail. Specifically, Wells argues that the accommodations provided by the Estelle Unit are insufficient for him to effectively write and receive letters. Courts have

---

[13] To succeed on a claim for ineffective assistance of counsel, Wells would need to prove that his counsel's performance was deficient and that had it not been for the deficient performance he would have insisted on going to trial. *See Arnold v. Thaler*, 630 F.3d 367, 368–72 (5th Cir. 2011) (setting forth analysis for a claim of ineffective assistance of counsel based on a guilty plea); *Armstead v. Scott*, 37 F.3d 202, 206–07 (5th Cir. 1994) (describing burden of proving that counsel's performance was deficient and that prejudice resulted).

10

recognized that a prisoner has a right to send and receive mail under the First Amendment. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006). Here, however, there is no evidence that Wells was denied access to mail services. For example, Smith-Cotton testifies that letter writing guides and a mechanical reader are provided and that ADS instructors are also available to help read and write letters. Wells offers no evidence showing he was ever unable to send or write mail with these resources when he wanted to. Further undermining Wells's claim is that he declined letter writing assistance from ADS caseworkers and did not attend scheduled meetings to discuss his needs.

Wells also argues that he was unable to send mail because the sound card was disabled on a computer in the Adaptive Resources Clinic. Smith-Cotton testifies that the computers in the lab are designed only for vocational training and that Wells had already acquired all of the computer skills that the lab provides. Thus, Wells fails to show that the disabled sound card resulted in any injury.[14] Accordingly, Wells does not offer any evidence creating an issue of material fact on his access to mail claim.[15]

---

[14] Wells does not argue in the district court or on appeal that his legal filings were read or tampered with by prison officials. *See Brewer v. Wilkinson*, 3 F.3d 816, 825–26 (5th Cir. 1993) (describing heightened interest in outgoing legal mail).

[15] On appeal, Defendants-Appellees assert that they are entitled to qualified immunity on the claims brought under Section 1983. Qualified immunity was never raised by the Defendants-Appellees in their motion for summary judgment and it was never ruled on by the district court, although it was listed as a defense in the answer. *See Kelly v. Foti*, 77 F.3d 819, 822–23 (5th Cir. 1996) (analyzing waiver of qualified immunity where it was not sufficiently raised below); *Martin v. Thomas*, 973 F.2d 449, 458–59 (5th Cir. 1992) (same). Because we hold that the district court did not err in finding that Wells fails to establish a constitutional violation on the merits, we need not determine whether qualified immunity was waived, given that establishing a constitutional violation is a necessary step in overcoming that defense. *See Pasco ex. rel. Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009) (laying out elements of qualified immunity defense).

No. 10-20648

Finally, because Wells offers no evidence showing that a constitutional violation is ongoing or is likely to occur, the district court also properly dismissed the claims for declaratory and injunctive relief brought under Section 1983. *Green v. Mansour*, 474 U.S. 64, 68 (1985).[16]

## B. Title II of the Americans with Disabilities Act

Plaintiff-Appellant Wells also brings claims for damages and equitable relief under Title II of the ADA, arguing that the Estelle Unit law library and Adaptive Resources Clinic denied him the benefits of and excluded him from participation in the services of those facilities. Like his constitutional claims, Wells argues that the law library or Clinic should have been equipped with a current model computer with screen reading software, such as JAWS, as well as Braille or audio versions of legal resources and Westlaw or Lexis Nexis access. The district court dismissed these claims, finding that there was no evidence of a violation of Title II of the ADA.

Because Wells sues the Defendants-Appellees in their official capacity for damages, the Defendants-Appellees assert state sovereign immunity as a defense to liability. Therefore, we must first determine whether the Defendants-Appellees are entitled to immunity on Wells's Title II claims. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 285–87 (5th Cir. 1999).

The Supreme Court has held that Title II of the ADA validly abrogates state sovereign immunity under the Fourteenth Amendment in certain cases. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). In *United States v. Georgia*, the Supreme Court established a three-part test for determining whether immunity is validly abrogated in a given case. *Id.* First, we must

---

[16] To the extent that Wells seeks damages against state officials in the their official capacities under 42 U.S.C. § 1983, this claim has been waived because it was not raised on appeal. *See Geiger v. Jowers*, 404 F.3d 371, 373 n.6 (5th Cir. 2005) (stating that although *pro se* briefs are construed liberally that these briefs are not immune from the rule "that issues and arguments not briefed on appeal are abandoned").

determine "which aspects of the State's alleged conduct violated Title II," and then second, determine "to what extent such misconduct also violated the Fourteenth Amendment." *Id.* Where the State's conduct violates both Title II and the Fourteenth Amendment, Title II abrogates sovereign immunity. Where the conduct violates Title II, but not the Fourteenth Amendment, we must then determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159; *Tennessee v. Lane*, 541 U.S. 509, 522–24 (2004); *City of Boerne v. Flores*, 521 U.S. 507, 529–36 (1997); *Hale v. King*, 642 F.3d 492, 497–98 (2011). Although this inquiry is often addressed on motion to dismiss, and thus phrased in terms of whether the plaintiff sufficiently "alleged" conduct violating Title II and the Fourteenth Amendment, other courts have considered the record when the inquiry is conducted at the summary judgment stage. *See, e.g.*, *Bolmer v. Olivia*, 594 F.3d 134, 145–49 (2d Cir. 2010) (considering record when determining abrogation in Title II claim); *Morris v. Kingston*, 368 F. App'x 686, 688–90 (7th Cir. 2010) (same); *Buchanan v. Maine*, 469 F.3d 158, 170–77 (1st Cir. 2006) (explaining that development of factual record may actually be necessary in some cases and resolving issue based on summary judgment record); *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 282–91 (1st Cir. 2006) (considering record).[17]

Under that test, we will first consider whether Wells offers sufficient evidence to create an issue of material fact on his Title II claims. To succeed on a claim under Title II of the ADA, a plaintiff must prove: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is

---

[17] *See also Georgia*, 546 U.S. at 160 (Stevens, J. concurring) (noting that remand in that decision "wisely permit[ted] the parties . . . to create a factual record that will inform [the Eleventh Amendment question].").

by reason of his disability." *Hale*, 642 F.3d at 499.[18]  To recover monetary damages, a plaintiff must prove that the discrimination was intentional. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002).  The relevant regulations implementing the ADA were amended in September 2010. 75 Fed. Reg. 56,164 (Sept. 15, 2010).  The amendments did not become effective until March 15, 2011, however, and they do not apply retroactively to any of Wells's claims for compensatory relief.  *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 401 (5th Cir. 2011) (stating that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result" (quotation marks omitted)); *Sierra Med. Ctr. v. Sullivan*, 902 F.2d 388, 392 (5th Cir. 1990) ("Generally, courts will not apply regulations retroactively unless their language so requires.").

The version of the regulation in effect in 2007 required that public entities "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of a service . . . conducted by a public entity."  28 C.F.R. § 35.160(b)(1) (2007).  When "determining what types of auxiliary aid and service is necessary, [the] public entity shall give primary consideration to the requests of the individual with disabilities."  28 C.F.R. § 35.160(b)(2) (2007).  Additionally, under the version of the ADA in effect at the time Wells sued, "auxiliary aids and services" were defined as including "qualified readers, taped texts, or other

---

[18] Title II provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998) (applying this Section to state prison inmates).

effective methods of making visually delivered materials available to individuals with visual impairments." 42 U.S.C. § 12102(1)(B) (2007).[19] [20]

The first element of a Title II claim, a qualifying disability, is not disputed. Thus, we will proceed to determine if Wells raises an issue of material fact on the second element of his claim—whether he was "denied the benefits of services, programs, or activities" of the Estelle Unit. First, Wells argues that he was denied the benefits of the law library because he was not provided the accommodation he ultimately requested—a computer with screen reading software, as well as Braille or audio versions of legal resources and Westlaw or Lexis Nexis access.

The record indicates that Wells was provided same-session library visits with an inmate of his choosing who would read to him and otherwise assist him in preparing filings. Additionally, the law library provided Wells a list of other prisoners who were available to assist him. Thus, the record shows that the law library offered Wells a qualified reader, which is listed in the ADA as a permissible auxiliary aid or service.[21] Further, the record shows that Hoke

---

[19] The implementing regulations similarly defined "auxiliary aids and services" as including, "[q]ualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments[.]" 28 C.F.R. § 35.104 (2007).

[20] Wells filed his lawsuit prior to the passage of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553 (2008), and any of its amendments do not apply retroactively to the claims for compensatory relief. *See EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

[21] The term qualified reader was not defined in the regulations in effect at the time Wells sued, 28 C.F.R. § 35.104 (2007), although the term has since been defined as "a person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary," 28 C.F.R. § 35.104 (2011). Although this new definition would not apply retroactively, the commentary to the regulations indicates that the amendment is not intended to lower the "qualified reader" standard. 75 Fed. Reg. 56,164, 56,191; 28 C.F.R. Pt. 35, App. A (2011). Wells does not offer any evidence showing that the prisoners available to assist him were not capable of reading "effectively, accurately, and impartially using any necessary specialized vocabulary." Given that the readers offered by the Estelle Unit meet the new

15

attempted to locate Braille and audio versions of legal resources, but found that these resources are not available.

Although the law library did not provide Wells his requested accommodations, the Defendants-Appellees demonstrate that the existing accommodations were more than sufficient to give Wells effective and meaningful access to the law library. *See* 28 C.F.R. Pt. 35, App. A (2007) (noting that although deference should be given to the auxiliary aid requested, it need not honor such request if it "can demonstrate that another effective means of communication exists"); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1082 (11th Cir. 2007) (same); *Chisholm v. McManimon*, 275 F.3d 315, 326 n.10 (3d Cir. 2001) (same); *see also Tucker v. Tennessee*, 539 F.3d 526, 533 (6th Cir. 2008) (stating that accommodation is not a violation of ADA, even if "not ideal," so long as it is reasonable and effective); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (stating that although consideration should be given to the individual's choice, "[n]othing in the ADA itself or its implementing regulations dictates that a disabled individual *must* be provided with the type of auxiliary aid or service he requests" and that deference to the requests is "by no means required"); *Petersen v. Hastings Pub. Schs.*, 31 F.3d 705, 708–09 (8th Cir. 1994) (stating auxiliary aids need not be those chosen by individual if they are effective). Indeed, similar accommodations have been found sufficient in prisons in the past. *See Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 887–88 (8th Cir. 2009) (holding that similar accommodations for a blind inmate to use law library did not violate the ADA).

Additionally, our conclusion that the provided auxiliary aids and services are sufficient is informed by the context of this suit—a correctional facility—and we accord the officials at the Estelle Unit deference in their determination of an

---

standard, they would also meet the old one.

No. 10-20648

appropriate accommodation. *See Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002); *Elliott v. Lynn*, 38 F.3d 188, 190–91 (5th Cir. 1994). We, therefore, conclude that Wells fails to offer evidence creating an issue of fact on his Title II claim as it applies to the law library.

Second, Wells argues that he was unable to effectively write and receive mail due to his disability. Wells requested that the Adaptive Resources Clinic provide JAWS software so he could read and write letters independently and privately. Again, the Defendants-Appellees offer evidence showing that the existing resources were effective, and Wells offers no evidence indicating that the existing resources are inadequate or did not meet his needs. The record also shows that Wells failed to take advantage of those resources, and it is not even clear that JAWS software, his requested accommodation, could help him read mail. Thus, Wells's claim under Title II for access to the mail also fails.

Because we find that Wells has failed to raise an issue of material fact on his claims under Title II of the ADA, we hold that the state is entitled to immunity and we conclude that the claims for damages were properly dismissed.[22] Additionally, Wells brings claims for injunctive and declaratory relief under Title II. As we noted, the relevant regulations were amended in September 2010, and the new amendments became effective on March 15, 2011. 75 Fed. Reg. 56,164 (Sept. 15, 2010). The district court ruled prior to the publication of the amendment, and it did not consider their effect. No argument is made on appeal related to whether the new amendments apply to Wells's claims for prospective relief, or whether the amendments somehow change the substantive requirements of Title II. Because the amendments were published

---

[22] Wells also brought claims against state officers in their individual capacity and for punitive damages under the ADA. These claims were dismissed by the district court, and Wells does not appeal that ruling on appeal. Thus, these claims are waived. *See Geiger*, 404 F.3d at 373 n.6.

prior to parties submitting briefing, Wells could have addressed their effect, but did not, and he thus waives any argument he might have made based on them. *See Geiger*, 404 F.3d at 373 n.6; *see also United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument."). Because we already found that Wells fails to submit any evidence showing a violation of Title II as it applies to his claims for damages, and because Wells waives any argument that his claims for prospective relief should be treated differently due to the amendments, we find no error in the district court's dismissal of the claims for prospective relief. We make no determination with respect to what effect, if any, these regulations would have on claims similar to Wells's where the issue is properly raised.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Wells's claims brought under Section 1983 and Title II of the ADA and we also DENY his motion for appointment of counsel.